**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS – EASTERN DIVISION**

|  |  |  |
|---|---|---|
| **Najah Dawaji** | ) | |
| | ) | |
| **Plainitff** | ) | |
| | ) | |
| **vs.** | ) | **NO.** |
| | ) | |
| | ) | |
| **Sunney Kohlhoss and** | ) | |
| **Morad Askar** | ) | |
| | ) | |
| **Defendants** | ) | |
| | ) | |

**COMPLAINT FOR CIVIL RIGHTS VIOLATIONS**
**UNDER 42 USC 1983 AND OTHER PENDENT ACTIONS**

NOW COMES the Plaintiff, **Najah Dawaji,** by and through her attorney, **Joel A. Brodsky**
and complains of the Defendants **Sunney Kohlhoss** and **Morad Askar** as follows:

**PRELIMINARY STATEMENT**

1.  This is a civil rights action for monetary damages brought under 42 U.S.C §1983, and
other pendant state causes of action, against Defendants Sunney Kohlhoss and Morad Askar, for
committing acts under color of law which deprived Plaintiff Najah Dawahi of rights secured by the
Constitution and laws of the United States and the State of Illinois.  The Defendant's violated, and
conspired to violate, the Plaintiffs Constitutional First Amendment right to access to the Courts; her
Fifth and Fourteenth Amendment rights to due process of law and to be free of false charges and,
malicious, and abusive process; her Fifth and Fourteenth Amendment rights to due process of law
and to be free of criminal actions brought purely to gain an advantage in a civil matter; and her right
to child support under 42 USC §651 et.seq.  Defendants accomplished this by having Defendant
Kohlhoss appointed as a special prosecutor and wrongfully bringing, under color of state law, a
petition to hold the Plaintiff in indirect criminal contempt of court wherein she could be imprisoned

for up to six (6) months, while at the same time Defendant Kholhoss was Defendant Morad Askar's divorce attorney in his divorce from the Plaintiff.

2.  Defendant Kohlhoss is an attorney licenced to practice law in the State of Illinois, and she was the last attorney to represent Morad Askar in his divorce from the Plaintiff, which at all times relevant hereto was pending in the Circuit Court of Cook County. The Defendants conspired to, and in fact did, bring a groundless indirect criminal contempt petition against Plaintiff in the Circuit Court of Cook County, to gain an advantage in the civil divorce proceedings. Their aim was to so intimidate and terrify the Plaintiff and make her so afraid that she would be going to jail and therefore lose custody of her children, that she would give up on pursuing her claims to support and property in the civil divorce case.

3. The Defendants accomplished this by asking for leave to file a groundless petition for indirect criminal contempt in the Circuit Court of Cook County's domestic relations division. After they were allowed to file the said contempt petition, when the Cook County States Attorney's office predictably refused to prosecute the groundless contempt charges, the Defendants had Attorney Kohlhoss s appointed as a special prosecutor so that they could pursue the baseless criminal contempt charges under color of state law. They did this even though at all times Attorney Kohlhoss (a) knew there was no probable cause for the charges, (b) knew she could not prove any of the allegations in contempt petition under the rules of evidence in criminal cases, and (c) at all times Attorney Kohlhoss knew she could not sustain her burden of proof beyond a reasonable doubt.

4. Further, at all times while she was acting as the special prosecutor on the petition for criminal contempt attorney Kohlhoss remained Morad Askar's divorce lawyer. He paid her for her time and efforts in pursuing the indirect criminal contempt charges, and her interests were always aimed at promoting her client/co-conspirators goal of preventing the Plaintiff from obtaining her rightful claims to child support and marital property by so intimidating her as to deny her rightful

access to the courts, due process of law, and child support.  All of these aforesaid rights are clearly established statutory or constitutional rights of which a reasonable person would have known of, under the First and Fourteenth Amendments to the United States Constitution and the laws and statutes of the United States of America.

5.  In the end the Defendants plan succeeded.  In exchange for the Plaintiff dropping all her legitimate property claims for martial property, and for accepting an amount of support which was a mere fraction of what it should have been, the Defendants had an order *Nolle Prosequi* entered dismissing the criminal contempt charges "as part of that settlement" in the civil case.

## JURISDICTION AND VENUE

6.  This Court has jurisdiction of this action under 28 U.S.C. §§1331 and 1343 in that Defendants' conduct violated rights guaranteed to Plaintiff under the First and Fourteenth Amendments of the United States Constitution. This Court has supplemental jurisdiction over Plaintiff's state law claim under 28 U.S.C. §1367(a).

7.  Venue is proper under 28 U.S.C. §1391(b).  The events giving rise to the claims asserted here all occurred within the district, and all or the parties reside in this district.

## PARTIES

8.  Plaintiff Najah Dawaji is an individual who is the mother of the two (2) minor children Zakaria and Muna Askar, and who at all times relevant hereto was the residential parent of those children.  Further, at all times relevant hereto Najah Dawaji was the respondent in the dissolution of marriage case of Morad Askar v. Najah Dawaji, 09 D 4129, and was the Defendant in the indirect criminal contempt case of Morad Askar, vs. Najah Dawaji, 13 MC1-600102.  Plaintiff Dawaji resides in Chicago, Illinois.

9.  Defendant Morad Askar is an individual who is the petitioner in the dissolution of marriage case of Morad Askar v. Najah Dawaji, 09 D 4129 and was the plaintiff in the  indirect criminal contempt case of Morad Askar, vs. Najah Dawaji, 13 MC1-600102.  He is the father, and

non-residential parent of the minor children Zakaria and Muna Askar.   Defendant Askar resides in Chicago, Illinois.

10.  Defendant Sunney Kohlhoss is an attorney licenced to practice law in the State of Illinois, and she has been so licenced since November 2007.   She is primarily a divorce attorney, and practices under the law firm name of "SK Law", and even though she has little experience she is the principle member of that law firm.

## FACTUAL ALLEGATIONS

11.  On May 4, 2009, the Defendant Morad Askar (hereinafter "Askar" or "Defendant Askar"), filed a Petition For Dissolution of Marriage in the Circuit Court of Cook County, Illinois, asking that his marriage to Plaintiff Najah Dawaji (hereinafter "Plaintiff" or "Dawaji"), be dissolved and that the Court determine the issues of the custody and support of the parties children, and divide their property and debts.  The Plaintiff was served with process and appeared shortly thereafter.

12.   On February 10, 2011, the Circuit Court of Cook County entered a Judgment of Dissolution of Marriage, dissolving the marriage of the parties, and granting the Plaintiff Dawaji and the Defendant Askar joint custody of their minor children, with Dawaji being the residential parent with whom the children resided on a day to day basis.

13.   However, the Judgment of Dissolution of Marriage entered on February 10, 2011, did not resolve the issues of child support, maintenance, the distribution of property or the debts of the parties, and reserved those issues for the future consideration of the court, thereby making the divorce case of Dawaji and Askar a "bifurcated divorce case", where the marriage of the parties is dissolved before the financial issues are addressed.

14.  At no time since May 4, 2009, when the divorce case was filed, and despite the fact that Dawaji had filed several motions asking for child support and maintenance, did the Cook County divorce judge entertain or rule on any such motion for child support or maintenance.  Therefore, at no time between May 4, 2009, and February 10, 2011 (and not until August 6, 2013, a period of

-4-

over four (4) years), was there any order entered awarding the Dawaji child support or maintenance.

15. A review of the docket in parties divorce case reveals what Defendant's Askar's strategy was during the entire divorce case. Each and every time a motion for financial relief was filed, or a hearing on financial matters approached, Defendant Askar would file motions and petitions regarding child custody or visitation in order to distract the parties and the court from the financial issues. [1]

16. Prior to February 10, 2011, the parties to the divorce case had not done much financial discovery, as they were pre-occupied with the Plaintiff Dawaji's motions for permission to move to Iowa, or regarding her move to Moline, Illinois. Therefore, after February 10, 2011, Plaintiff Dawaji started to ask for financial related discovery and press for an order for child support and maintenance. However, Defendant Askar countered by filing motions regarding the children's custody in a continuing attempt to prevent the court from reaching financial issues.

17. Finally, on April 11, 2012, a Joint Parenting Agreement And Custody Judgment (hereinafter the "Custody Order" or "JPA") was entered by the Court in the case of Morad Askar v. Najah Askar (n/k/a Najah Dawaji), 09 D 4129. After this order was entered Plaintiff Dawaji once again began to press for a resolution of the issues of child support, maintenance, a division of martial property and debts.

18. From May 9, 2012, and continually since that date, Defendant Askar has been represented in the aforesaid divorce case of Morad Askar v. Najah Askar (n/k/a Najah Dawaji), 09 D 4129, by Defendant Attorney Sunney Kohlhoss, (hereinafter "Defendant Kohlhoss" or "Attorney

---

[1] For example a hearing on "all financial matters" was set for August 15, 2011. However, on August 10, 2011 Morad filed a "Emergency Petition For Modification Of Residential Custody", which resulted in a hearing on August 15, 2011 on custody. Then, for good measure, to assure everyone was distracted, even though he lost the emergency motion Morad filed an Emergency Motion To Reconsider And For Rehearing on August 29, 2011

Kohlhoss").

19.   In response to being pressed on financial issue, Defendant Askar and Defendant Kohlhoss agreed that they would endeavor to bring contempt charges against Plaintiff Dawaji in order to gain an advantage in the divorce case  and to stop her from continuing to press forward on the financial parts of the divorce case.   In doing so Attorney Kohlhoss investigated potential charges, fabricated false charges and evidence, and knowingly made false and fabricated allegations, which had no basis in fact, to the divorce court, so as to lay the groundwork for gaining leave to file the contempt charges.

20. In furtherance of their conspiratorial agreement,  on November 14, 2012, Defendant Kohlhoss, acting for Defendant Askar and with his full knowledge and agreement, filed a Petition for Civil Contempt, which was withdrawn a month later, accusing the Plaintiff Dawaji of violating certain terms of the parties Joint Parenting Agreement, which was entered only seven (7) months earlier.  (This petition was withdrawn because civil contempt would not serve the purpose the Defendants were trying to achieve, as the remedy of civil contempt is merely to coerce compliance, whereas the remedy is criminal contempt is to punish with jail time.)

21.   Then, on January 8, 2013, the Defendant Kohlhoss, acting for Defendant Askar and with his full knowledge and agreement, filed a Petition For Change of Custody, asking for sole custody of the parties two (2) minor children.

22.   Then, on May 1, 2013, in furtherance of their conspiratorial agreement, Defendant Kohlhoss, acting for Defendant Askar and with his full knowledge and agreement, asked for and was granted leave to file a Petition For Indirect Criminal Contempt against Plainitff Dawaji.  In granting the said leave the divorce court did not make any finding that probable cause existed.

23. On May 1, 2013, immediately after being granted leave to do so,  Defendant Kohlhoss, acting for Defendant Askar, and with his full knowledge and agreement, filed a seven (7) Count verified Petition For Adjudication of Criminal Contempt (hereinafter the "criminal contempt petition"),

which was assigned case number 13 MC1-600102, and was styled <u>Morad Askar v. Najah Dawaji</u>, 03 MC1-600102, in the Circuit Court of Cook County, Illinois. The allegations in this criminal contempt petition also formed the basis of Defendant Askar's change of custody petition filed on January 8, 2013, and are practically identical to the Petition for Civil Contempt filed by Defendant Askar on November 14, 2012, (which was withdrawn).

24. In the criminal contempt petition Defendant Askar and Defendant Kohlhoss brought charges that they knew were false, that they had fabricated, and that they knew they could not prove. Further they not only made allegations that they knew were false, they also brought charges they knew did not warrant criminal contempt charges, and allegations which grossly misrepresented matters about the parties children. For example on page 14 of Askar's criminal contempt petition he says that the child Muna "has received poor grades in civic and science", since fall 2012. However, Muna's report card for 2012-2013, shows that she received an <u>A in reading</u>, an <u>A+ in writing</u>, and <u>A in spelling</u>, a <u>B in math</u>, an <u>A in science</u>, and "<u>exceeds expectations</u>" in <u>art</u>, <u>library skills</u>, <u>music</u> and <u>physical education</u>. (She did get a D in orchestra, so Muna will not be a musician.)

25. On May 1, 2013, upon being granted leave to file the criminal contempt petition, Defendant Askar was directed to provide notice to the Cook County States Attorney's office of the filing of the said petition for the purpose of ascertaining if they wished to prosecute the action in the name of the People of the State of Illinois.

26. On May 10, 2013, an assistant from the Cook County States Attorney's office reported to the court that their office was declining to prosecute the petition for criminal contempt.

27. Immediately thereafter on May 10, 2013, rather than allow the petition for criminal contempt to be dismissed, Defendant Askar's divorce attorney, Defendant Attorney Kohlhoss requested that she be appointed special prosecutor by the divorce court, and she was so appointed.

28.   The aforesaid appointment as "special prosecutor" allowed the Defendant Attorney Kohlhoss to act under color of state law and pursue the prosecution of the aforesaid criminal contempt petition against Plaintiff Dawaji.  Each and every time she approached the Cook County Circuit Court judge assigned to hear the criminal contempt petition she identified herself as the "special prosecutor" in the case. Further Defendant Kohlhoss had Plaintiff Dawaji arraigned, argued for a bond with restrictions on Plaintiff Dawaji's liberty at a bond hearing which she conducted, and at all times acted as a prosecutor who was prosecuting a criminal case.

29.   However, despite the pretense of being a "special prosecutor", Defendant Kohlhoss was not paid by public funds, nor did she hold any office other than to prosecute the criminal contempt petition against Plaintiff Dawaji, nor was she principally concerned with enhancing the public good. In being the special prosecutor in the criminal contempt case against the Plaintiff Dawaji, Attorney Kohlhoss was merely using the mechanisms of government to achieve her and her clients Askar's own ends, that being preventing and/or interfering with the Petitioner Dawaji  exercise of her constitutional and statutory rights, to wit:

> First Amendment access to the court; Fifth and Fourteenth Amendment Due Process by bringing false criminal charges; Fifth and Fourteenth Amendment Due Process by bringing a criminal action to gain an advantage in a civil case; Fourth and Fifth Amendment Abuse of Process,  Fourth and Fifth Amendment Malicious Prosecution, and 42 USC 651 right to child support.

30.   Thereafter, faced with the prospect of a criminal prosecution, and terrified, intimidated and convinced that she would be imprisoned by a court system which she couldn't even get to provide her with a child support order, and that this would cause her to lose custody of her children since the change of custody petition was based on the same false allegations as the criminal contempt petition, the Plaintiff agreed (a) to give up all of her rights to any marital property, (b) to waive any claims for back due child support or maintenance, (c) to accept a mere $2200 per month in unallocated child support and maintenance for 24 months, (which amount is only a fraction of what she should be receiving for child support alone), in full satisfaction of her maintenance claim

(which was worth several hundred thousand dollars), (d) to relocate to Chicago from Moline Illinois and (e) give up 50% of her time with her children.  In exchange for all of these concessions Defendant Askar agreed to dismiss the criminal contempt charge.

31.    Defendant Attorney Kohlhoss and Defendant Askar agreed to dismiss the criminal contempt petition in exchange for the aforesaid extraordinarily one sided civil divorce settlement even though Illinois Supreme Court Rule of Professional Conduct 8.4 (g) says that "It is professional misconduct for a lawyer to: present, participate in presenting, or threaten to present criminal or professional disciplinary charges to obtain an advantage in a civil matter".

32.  Had she not been so terrified, intimidated and convinced that she would be imprisoned because of the false criminal contempt charges, Plaintiff Dawaji would have been able to make a record which would entitle her well over three quarters of a million dollars ($750,000.00) in marital assets, as well as child support and maintenance in an amount in excess of $5000.00 per month, which Defendant Askar was actively hiding income and assets to prevent, and initiated the criminal contempt petition to stop.

33.  Had she not been so terrified, intimidated and convinced that she would be imprisoned because of the false criminal contempt charges, Plaintiff Dawaji  would have been able to introduce and expose much information that shows that Askar had possession of substantial martial assets, and that he should be paying in excess of $5000.00 per month in child support and maintenance, including, but not limited to,  the following:

a. Askar owns and controls Stage 5 Trading, a futures trading firm, and is using his new 28 year old bride, Lena Askar (formerly Lena Elkahtib), as a straw man or shill, to hide the ownership of Stage 5 Trading, and divert his income and assets.

b.  Askar opened a clearing account at Crossland Trading, LLC, for futures trading in February 2009 for Kandalaya Trading. In doing so he executed an application and guarantee with this federally regulated clearing firm which states that in 2009, the year the divorce case was filed, Askar certified that his net worth was $1,500,000.00 (1.5 million dollars), that his annual income was more than $125,000 per year, that his liquid assets amounted to $280,000.00, and he had other additional annual income from trusts and investments of $40,000.00.   Tax documents for Kandalaya Trading show that Askar was

the sole stockholder in the corporation.[2]

c. By examining Askar's LinkedIn page and his blog postings on bigmikestrading.com, rthe following is admitted by Askar in his own words: Askar went to work running a division of Vankar Trading, Inc., in charge of online trading and traders. (He said in the divorce discovery, if we believe him, that he had no ownership interest in Vankar.) In that job Askar states that he built customer relationships with individual traders. Askar was at Vankar for a year and a half, and then founded Stage 5 Trading, where he is "Managing Partner". Since November 2012 Askar states that he has been moving all of his customer accounts from Vankar over to Stage 5 Trading. In fact Askar states that the "Vankar Trading Exclusive Client Chat Room" on Vankar's website proudly proclaims: "The trader chat room under VanKar has been moved to Stage 5 Trading Corp. If you are a VanKar client, please go to the chat room here:", and then there is a link to the Stage 5 Trading website.

d. On paper Stage 5 Trading is a futures brokerage firm owned by Lena Elkhatib, Defendant Askar's 28 year old bride who he married in March of 2013. Askar married Lena in a ceremony in Toledo Ohio which was not announced to anyone, and which Askar even tried to deny at a court appearance in the divorce case. However, Lena Askar's online resume shows that she her employment history is as an art director a small advertising firms, and has no experience at all in the commodities futures trading business.

e. As to Askar's real interest in Stage 5 Trading, he makes a very interesting statement in answer to a questions on the bigmikestrading.com blog about his ownership in Stage 5 Trading:

> "Again, **for personal reasons**, my interest in brokerage is that of being involved with traders and trading and not in complete ownership and control of a brokerage firm." (emphasis added)

and in response to a question as to why isn't trading futures, but only "helping others" right now, Askar's answer is again telling:

> "The webinars I conduct for our traders are effortless and just a verbal manifestation of what I type in the room. They don't take a lot of extra effort. **My prop operations are on standby right now as I focus on building this brokerage with Anthony. In the future I want to return to prop**. (emphasis added)

(Please note that "Anthony" is Anthony Giacomin, the "owner" and the other managing partner of Stage 5 Trading.

---

[2] However, the Circuit Court of Cook County Rule 13.3.1 disclosure filed by Askar in the divorce case in 2009 states that he only has $50,000 annual income and that his assets are a fraction of what his statement to Crossland Trading, LLC, states. The unsigned copies of his 2009 income tax return that Askar produced in discovery in the divorce case show a loss, and nothing to indicate substantial assets.

**COUNT I - 42 U.S.C. §1983**
**DENIAL OF FIRST AMENDMENT RIGHT OF ACCESS TO THE COURTS**

1-33.  Plaintiff re-alleges paragraphs one (1) through thirty-three (33) of this complaint as paragraphs one (1) through thirty-three (33) of Count I of this complaint.

34.  The right of access to the courts is guaranteed by the First Amendment to the Constitution of the United States in the right to petition the government for the redress of grievances.

35.  In the manner described more fully above, each of the Defendants, all while acting individually, jointly, and in conspiracy, and under color of law, denied Plaintiff the right to access to courts by their wrongful actions of intimidation and the bringing of false and fabricated contempt charges to gain an advantage in the civil divorce case, and in the suppression of relevant information and evidence, which deprived Plaintiff of her claims against Defendant Askar and deprived her of her right to property without due process of law.

36. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others, and deprived the Plaintiff of clearly established statutory and constitutional rights of which a reasonable person would have known the Plaintiff possessed.

**COUNT II - 42 U.S.C. §1983**
**DENIAL OF FOURTEENTH AND FIFTH AMENDMENT**
**RIGHT OF DUE PROCESS**

1-36.  Plaintiff re-alleges paragraphs one (1) through thirty-six (36) of this complaint as paragraphs one (1) through thirty-six (36) of Count II of this complaint.

37.  As described more fully above, Defendants Askar and Kohlhoss, all while acting individually, jointly, and in conspiracy, as well as under color of law, deprived Plaintiff of her constitutional right to due process of law.

38. In the manner described more fully above, the Defendants deliberately withheld evidence, as well as fabricated false reports and other evidence, thereby misleading and

misdirecting state court judges, and initiated a criminal contempt proceeding based on false and fabricated allegations against the Plaintiff for the sole purpose of gaining an advantage in the civil divorce case. Absent this misconduct, the Plaintiff would not have abandoned her rights to marital property, a proper amount of child support and maintenance, and her right to raise her children where she wanted and as she saw fit.

39. The misconduct of the Defendants also resulted in the unjust criminal prosecution of Plaintiff, thereby denying her her Constitutional right not to be prosecuted without probable cause and in violation of the Due Process Clause of the Fourteenth and Fifth Amendments of the United States Constitution.

40. As a result of the violation of her constitutional rights, Plaintiff suffered injuries, including but not limited to the loss of property, the loss of support, and emotional distress.

41. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights, and deprived the Plaintiff of clearly established statutory and constitutional rights of which a reasonable person would have known the Plaintiff possessed.

### COUNT III - 42 U.S.C. §1983
### ABUSE OF PROCESS

1-41. Plaintiff re-alleges paragraphs one (1) through forty-one (41) of this complaint as paragraphs one (1) through forty-one (41) of Count III of this complaint.

42. Defendant Kohlhoss used her official position as special prosecutor to enabled her to undertake the investigation and prosecution of the Plaintiff and thereby abuse process for purposes of extortion, intimidation, and to gain an advantage in the civil case in which she represented Defendant Askar.

43. The injuries caused by Defendant Kohlhoss and Defendant Askar's actions include the deprivation of liberty concomitant to arrest and to the pendency of a criminal process, whether the

plaintiff was in jail, released on bail, or released on her own recognizance. Such deprivations without due process state an injury actionable under section 1983.

44.   When process is used to effect an extortionate demand, or to cause the surrender of a legal right, or is used in any other way not so intended by proper use of the process, as is more fully described above,  a cause of action for abuse of process is actionable.

45.   The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights, and deprived the Plaintiff of clearly established statutory and constitutional rights of which a reasonable person would have known the Plaintiff possessed.

### COUNT IV - 42 U.S.C. §1983
### BRINGING A CRIMINAL COMPLAINT
### TO GAIN AN ADVANTAGE IN A CIVIL CASE

1-45.   Plaintiff re-alleges paragraphs one (1) through forty-five (45) of this complaint as paragraphs one (1) through forty-five (45) of Count IV of this complaint.

46. Defendant Kohlhoss used her official position as special prosecutor enabled her to undertake the investigation and prosecution of the Plaintiff and thereby to gain an advantage in the civil case in which she represented Defendant Askar.

47.   To take such a course of action is specifically prohibited by Illinois Supreme Court Rule of Professional Conduct 8.4(g).

48.   The misconduct described in this Count, under color of law, was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights, and deprived the Plaintiff of clearly established statutory and constitutional rights of which a reasonable person would have known the Plaintiff possessed.

49.   The injuries caused by Defendant Kohlhoss and Defendant Askar's actions include the deprivation of liberty concomitant to arrest and to the pendency of a criminal process, whether the plaintiff was in jail, released on bail, or released on her own recognizance. Such deprivations

without due process state an injury actionable under section 1983.

### COUNT V - 42 U.S.C. §1983
### RIGHT TO CHILD SUPPORT UNDER 42 U.S.C. 651 et. seq.

1-49.  Plaintiff re-alleges paragraphs one (1) through forty-nine (49) of this complaint as paragraphs one (1) through forty-nine (49) of Count V of this complaint.

50.  42 USC 651 et.seq., establishes under federal law the right of Plaintiff as the parent who is defined in the said statute as the custodial parent to establish child support through a court order, receive the same, collect, and obtain state services in doing all of the above.

51.  In the manner described more fully above, each of the Defendants, all while acting individually, jointly, and in conspiracy, and under color of law, denied Plaintiff the statutory right child support by their wrongful actions of intimidation and the bringing of false contempt charges to gain an advantage in the civil divorce case, and in the suppression of relevant information and evidence which deprived Plaintiff of her claims for child support without due process of law, and denied her meaningful access to the courts..

52.  The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights, and deprived the Plaintiff of clearly established statutory rights of which a reasonable person would have known the Plaintiff possessed.

### COUNT VI - 42 U.S.C. §1983 and ILLINOIS STATE LAW
### MALICIOUS PROSECUTION

1-52.  Plaintiff re-alleges paragraphs one (1) through fifty-two (52) of this complaint as paragraphs one (1) through fifty-two (52) of Count VI of this complaint.

53.  Plaintiff was improperly subjected to judicial proceedings for which there was no probable cause. These judicial proceedings were instituted and continued maliciously, resulting in injury, and all such proceedings were terminated in Plaintiff's favor in a manner indicative of innocence.

-14-

54. The Defendant Askar and Defendant Kohlhoss. acting under color of law, accused Plaintiff of criminal activity knowing those accusations to be without probable cause, and they made statements to the divorce court and municipal court judges with the intent of exerting influence to institute and continue judicial proceedings.

55. Statements of the Defendants regarding Plaintiff's alleged culpability were made with knowledge that the statements were false and, and where under oath perjured. In so doing, Defendants fabricated evidence and withheld exculpatory information.

56. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's constitutional rights, and deprived the Plaintiff of clearly established constitutional and statutory rights of which a reasonable person would have known the Plaintiff possessed.

57. As a result of this misconduct, Plaintiff has suffered and continues to suffer injuries including pain and suffering.

### COUNT VII - ILLINOIS STATE LAW
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS'

1-57. Plaintiff re-alleges paragraphs one (1) through fifty-seven (57) of this complaint as paragraphs one (1) through fifty-seven (57) of Count VII of this complaint.

58. The acts and conduct of the Defendants as set forth above were extreme and outrageous. The Defendants intended to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Plaintiff.

59. Said actions and conduct did directly and proximately cause severe emotional distress to Plaintiff and thereby constituted intentional infliction of emotional distress.

60. The misconduct described in this Count was undertaken with malice, willfulness, and reckless indifference to the rights of others and was objectively unreasonable and was undertaken intentionally with willful indifference to Plaintiff's rights, and deprived the Plaintiff of clearly

established constitutional and statutory rights of which a reasonable person would have known the Plaintiff possessed.

61. As a proximate result of Defendants' wrongful acts, Plaintiff suffered damages, including severe emotional distress and anguish.

## COUNT VIII - ILLINOIS STATE LAW
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS
## (PLEAD IN THE ALTERNATIVE

1-61. Plaintiff re-alleges paragraphs one (1) through sixty-one (61) of this complaint as paragraphs one (1) through sixty-one (61) of Count VII of this complaint.

62. This Count is plead in the alternative.

63. Defendants had a duty not to engage in such extreme and outrageous behavior as to cause a reasonable person emotional distress.

64. In a negligent breach of their aforesaid duty, the Defendants engaged in the behavior which as set forth above was extreme and outrageous and did in fact cause the Plaintiff severe emotional distress and thereby constituted negligent infliction of emotional distress.

65. The misconduct described in this Count was undertaken was objectively unreasonable and was undertaken with indifference to Plaintiff's rights, and deprived the Plaintiff of clearly established constitutional and statutory rights of which a reasonable person would have known the Plaintiff possessed.

66. As a proximate result of Defendants' wrongful acts, Plaintiff suffered damages, including severe emotional distress and anguish.

WHEREFORE, the Plaintiff **Najah Dawaji**, respectfully requests that this Court enter judgment in his favor and against Defendants, **Morad Askar** and **Sunney Kohlhoss**, awarding compensatory damages, costs, and attorneys' fees, along with punitive damages against each of the individual Defendants, as well as any other relief this Court deems just and appropriate.

-16-

## **JURY DEMAND**

Plaintiff, Najah Dawaji, hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Plaintiff Najah Dawaji

By: _____/s/ Joel A. Brodsky_____
    Joel A. Brodsky her Attorney

**Joel A. Brodsky**
Attorney for Plaintiff Najah Dawaji
8 S. Michigan Ave.
Suite 3200
Chicago Illinois 60603
(312) 541-7000
jbrodsky@joelbrodskylaw.com