**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **NAJAH DAWAJI,** | ) | |
| | ) | **No. 13 CV 6404** |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Magistrate Judge Young B. Kim** |
| | ) | |
| **SUNNEY KOHLHOSS and** | ) | |
| **MORAD ASKAR,** | ) | |
| | ) | **November 27, 2013** |
| **Defendants.** | ) | |

**MEMORANDUM OPINION and ORDER**

Morad Askar sought a divorce from his wife, Najah Dawaji, in 2009. After the marriage was terminated, Askar retained attorney Sunney Kohlhoss and Dawaji retained attorney Joel Brodsky to represent them during the financial and child custody phases of their divorce proceeding. Related to those proceedings, Askar filed a petition for indirect criminal contempt against Dawaji. His attorney served as the special prosecutor to prosecute the contempt petition. After Brodsky and Kohlhoss negotiated a resolution of the financial and custody matters, Kohlhoss dismissed the contempt petition. Shortly thereafter, Dawaji, by her attorney Brodsky, brought this action under 42 U.S.C. § 1983 against Askar and Kohlhoss, alleging that their pursuit of the contempt petition deprived Dawaji of various constitutional rights. Defendants now move to disqualify Brodsky from representing Dawaji in this matter on the ground that he is a key witness to the most salient facts of the case and will be a necessary witness at trial. This court

denies the motion as premature and cautions Dawaji that she should consider retaining substitute or a second counsel for the following reasons:

**Facts**

In 2009, Morad Askar filed a petition for dissolution of his marriage to Najah Dawaji. (R. 1, Compl. at ¶ 11.) In 2011, the state court presiding over the divorce proceeding terminated the marriage and granted the parties joint custody of their two minor children, with Dawaji as the residential parent. (Id. at ¶ 12.) The court also set for trial the remaining issues of child support, maintenance, the distribution of property, and other financial matters. (Id. at ¶¶ 12, 13.) Shortly thereafter, the court entered a Joint Parenting Agreement and Custody Judgment ("JPA") to govern the joint custody arrangement. (Id. at ¶ 17.)

Both parties retained new counsel before litigating the financial matters. In May 2012, Askar retained Kohlhoss, and in January 2013, Dawaji retained Brodsky. (Id. at ¶ 18; see also R. 14, Defs.' Mot. at 3.) In April 2013, Kohlhoss filed a petition for indirect criminal contempt against Dawaji alleging a failure to comply with certain terms of the JPA. (R. 14, Defs.' Mot., Ex. K.) The following month, the presiding judge appointed Kohlhoss as a special prosecutor to prosecute the contempt petition. (Id., Ex. N.) Brodsky was successful in moving for a substitution of judge for adjudication of the contempt petition but was unsuccessful in moving to dismiss the petition. (Id., Exs. P and S.) On July 24, 2013, the same day that Dawaji's motion to dismiss the contempt petition was denied, the parties negotiated a settlement of the financial and custody matters and withdrawal of the contempt

petition.  The following day the parties appeared for a hearing where they presented the terms of an agreed order resolving all remaining financial and custody matters. (Id., Ex. T.)  At the hearing, the parties also informed the court that Askar had agreed to withdraw his contempt petition.  (Id. at 19.)  On August 6, 2013, the parties submitted an agreed order consistent with these terms and on August 21, 2013, the presiding state court dismissed the contempt petition.  (Id., Exs. U and V.)

Dawaji then filed this Section 1983 suit alleging that Defendants' pursuit of the criminal contempt petition violated her constitutional rights because they intimidated her into accepting a grossly unfair divorce settlement.  (R. 1, Compl. at ¶¶ 32-33.)  Defendants seek to disqualify Brodsky from serving as counsel in this case.  (R. 14.)  They argue that Brodsky was centrally involved in all of the negotiations and discussions concerning the divorce settlement and the contempt petition, as well as all of the representations to the state court judges adjudicating those matters, and that Brodsky would likely be called as a witness at trial to testify.  They also argue in their reply brief that Brodsky's cross-examination of Defendants regarding conversations he had with either or both of them would create an "unsworn witness" problem, meaning that even if he did not testify, his questioning of Defendants' recollection of conversations to which he had been a party might be perceived by the trier of fact as testimony as opposed to advocacy.

## Analysis

This court looks to the American Bar Association's Model Rules of Professional Conduct ("ABA Model Rules") to rule on the motion to disqualify. This court adopted the ABA Model Rules as its rules of professional conduct except where they are inconsistent with the Rules of Professional Conduct in the state in which the lawyer's principal office is located, in which case "any lawyer admitted to practice in Illinois is governed by the Illinois Rules of Professional Conduct." *See* L.R. 83.50 (effective June 2011); *Walton v. Diamond*, No. 12 C 4493, 2012 WL 6587723, at *1 (N.D. Ill. Dec. 14, 2012). The relevant rule in this case is ABA Model Rule 3.7(a), entitled "Lawyer as Witness," which states as follows:

> (a) A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless: (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client.

ABA Model Rule 3.7. This rule is identical to Illinois Rule of Professional Conduct 3.7. *See* Ill. R. Prof"l Conduct 3.7.

"[T]he prohibition against a lawyer serving as an advocate at trial and testifying as a witness in the same matter is aimed at eliminating confusion about the lawyer's role." Ellen J. Bennett, et al., ANNOTATED MODEL RULES OF PROFESSIONAL CONDUCT 373 (7th ed. 2011). A trier of fact could be confused by an attorney-witness because a "witness is required to testify on the basis of personal knowledge, while an advocate is expected to explain and comment on evidence given by others. It may not be clear whether a statement by an advocate-

witness should be taken as proof or as an analysis of the proof." ABA Model Rule 3.7, comment 2. This confusion could prejudice either party—the attorney-witness may be perceived to be biased in favor of his or her client, or, conversely, might be perceived as unquestionably trustworthy because he or she is an officer of the court. In either case, an attorney serving in both roles "is apt to be a poor witness, a poor advocate, or both." *Gusman v. Unisys Corp.*, 986 F.2d 1146, 1148 (7th Cir. 1993).

In their motion to disqualify, Defendants question Dawaji's ability to establish her claims without extensive testimony from Brodsky because he represented and advised her during the settlement negotiations and for all representations to the state court judges about those settlements. Dawaji counters that she need not call Brodsky to prove her case because she intends to rely on documentary evidence and testimony from other witnesses. Regardless, Defendants claim that they are likely to call Brodsky to prove that Dawaji accepted the settlement because she believed that she would be unable to obtain better terms for child support and maintenance, not because she felt coerced into doing so.

ABA Model Rule 3.7 requires that Defendants show that Brodsky's testimony is necessary, meaning that it would be "unobtainable elsewhere." Bennett, *supra* at 4, at 376. This is a high hurdle, because when "one party argues that an opponent's attorney is a necessary witness and moves to disqualify that attorney . . . courts view the opponent's asserted need to call the attorney more skeptically and must be concerned about the possibility that the motion to disqualify is an abusive

tactic to hurt the opponent's ability to pursue his case." *Harter v. University of Indianapolis*, 5 F.Supp.2d 657, 663 (S.D. Ind. 1998).

At this point in the litigation, this court finds that it is too early to anticipate the testimony or proof likely to be offered by any of the parties. Even if Brodsky's testimony can be deemed to be necessary at trial, ABA Model Rule 3.7 does not empower this court to disqualify him at this time. *See* ABA Model Rule 3.7 ("A lawyer shall not act as an advocate *at a trial* in which the lawyer is likely to be a necessary witness") (emphasis added). As compared to Local Rule 83.53.7(c)—which governed the issue of a lawyer serving as a witness prior to the adoption of the ABA Model Rules—ABA Rule 3.7 is more permissive during the pre-trial phase. The prior rule stated that "'nothing in this rule shall be deemed to prohibit a lawyer barred from acting as an advocate in a trial or evidentiary proceedings from handling other phases of the litigation.'" *Mercury Vapor Processing Techs., Inc. v. Village of Riverdale,* 545 F.Supp.2d 783, 789 (N.D. Ill. 2008) (quoting Local Rule 83.53.7). In *Mercury*, the court denied as premature a motion to disqualify brought before discovery, finding that "even if [the attorney] later becomes a witness at trial or in an evidentiary proceeding, he is not prohibited from conducting discovery, drafting motions, or serving in some other capacity at this stage in the litigation." *Id.* Thus, this court concludes that even if Brodsky later becomes a witness at trial, he is not prohibited from representing Dawaji at this time.

For the sake of completeness, this court also addresses Defendants' theory of the "unsworn witness" problem. This problem arises when an attorney could be

perceived as testifying when questioning or cross-examining a witness about a conversation to which he or she was a party. In this case, if Brodsky questions Defendants' recollections of the settlement negotiations that resulted in the dismissal of the contempt petition, his prompts could be perceived as testimony about his personal recollections of those negotiations. However, Defendants did not advance this argument in their opening brief, so it is considered waived here. *See Williams v. O'Leary*, 55 F.3d 320, 323 n.4 (7th Cir. 1995) ("We do not ordinarily consider arguments raised for the first time in a reply brief."). "The reason for this rule of waiver is that a reply brief containing new theories deprives the respondent of an opportunity to brief those new issues." *Wright v. United States*, 139 F.3d 551, 552 (7th Cir. 1998). Dawaji has not had an opportunity to argue how the "unsworn witness" rule interacts with the applicable ABA rules. Also, because this court cannot predict whether this case will proceed to trial, or whether Brodsky's conversations with Defendants will be at issue at trial, it is premature to weigh the "unsworn witness" concerns.

Dawaji should, however, consider whether to keep Brodsky as her counsel in this case. Even though the court is not removing Brodsky as her counsel at this time, the downside to having Brodsky prosecute this case on her behalf may be great in the long run if the case survives Defendants' motion to dismiss. His potential testimony as a deponent or trial witness could detract from her claim. For example, if Brodsky represents her during discovery and offers deposition testimony to substantiate Dawaji's alleged feelings of intimidation or coercion, the testimony

would be subject to impeachment for bias due to Brodsky's dual role. *See Sicher v. Merrill Lynch & Co., Inc.,* No. 09 C 1825, 2009 WL 4894658, at \*2 (N.D. Ill. Dec. 11, 2009). A "lawyer-witness, given his partiality as an advocate, may actually cause the jury to skeptically disregard the facts to which he avers as a witness." *Id.* (citing *United States v. Morris*, 714 F.2d 669, 671 (7th Cir. 1983)). Additionally, Defendants point out that Brodsky has a financial stake in the case arising from Dawaji's pursuit of attorneys' fees in this case. The fee arrangement is not grounds for disqualification under ABA Model Rule 3.7, but it could be another basis for impeaching Brodsky's testimony if he is called as a witness. This court cautions Dawaji that the longer Brodsky serves as counsel in this case, the more persuasive the inference of bias will be.

This court trusts that Brodsky will heed his ethical obligation under ABA Model Rule 1.4 and the companion Illinois rule regarding communication to his client. The comment to that rule states that "[a] lawyer may not withhold information to serve the lawyer's own interest." ABA Model Rule 1.4, comment 7. Defendants allege that Brodsky was Dawaji's advisor when she accepted the settlement terms she now attacks as grossly unfair. They further allege that Brodsky failed to inform the state court judge presiding over the divorce proceeding that Dawaji's acceptance of the settlement terms was coerced. If facts supportive of a legal malpractice case against Brodsky develop, this court reminds Brodsky that ABA Model Rule 1.4 requires attorneys to engage in fulsome client-lawyer communications.

Returning to the issue at hand, this court has no choice but to deny Defendants' motion as premature because "[d]isqualification is a drastic measure that the courts should impose only when absolutely necessary," *Livers v. Wu*, 6 F.Supp.2d 921, 925 (N.D. Ill. 1998), and because ABA Model Rule 3.7 does not limit the choice of counsel for pre-trial proceedings. Dawaji may be reluctant to hire new counsel, but if she chooses to have Brodsky represent her despite the concerns articulated above, she does so at her own peril. If the case proceeds to trial and Brodsky's testimony is found to be necessary, Dawaji will not be permitted to argue that she would be unfairly prejudiced by Brodsky's disqualification on the eve of trial.

## Conclusion

For the foregoing reasons, the motion to disqualify Dawaji's counsel is denied without prejudice.

ENTER:

Young B. Kim
United States Magistrate Judge