IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS – EASTERN DIVISION

| | |
|---|---|
| **Najah Dawaji,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| | ) No. 13 CV 6404 |
| vs. | ) |
| | ) |
| | ) |
| **Sunney Kohlhoss and** | ) |
| **Morad Askar** | ) |
| | ) |
| **Defendants.** | ) |

# PLAINTIFF'S JOINT RESPONSE TO BOTH DEFENDANTS' MOTIONS TO DISMISS

Now comes Plaintiff, Najah Dawaji, by and through her attorney, Joel A. Brodsky and in response to both of the Defendants' Motions to Dismiss, respectfully sets forth the following:

## I. Plaintiff's Claims are not Barred by the Rooker-Feldman Doctrine

Defendants misconstrue Plaintiff's federal claims. Plaintiff's federal claims arise out of wrongful criminal contempt charges and not the underlying state divorce proceedings. Plaintiff is not asking this Court to review the validity of the divorce court's order or to otherwise overturn the state divorce court ruling. Instead Plaintiff asks this Court to rule on the wrongful prosecution of the criminal contempt charges leveled against her, an entirely independent federal claim. For these reasons, the Rooker-Feldman doctrine does not bar Plaintiff's federal claims.

> The Rooker-Feldman doctrine asks: is the federal plaintiff seeking to set aside a state judgment, or does he present some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party? If the former, then the district court lacks jurisdiction; if the latter, then there is jurisdiction and state law determines whether the defendant prevails under principles of preclusion. **Gash Assocs. v. Rosemont, 995 F.2d 726, 728 (7th Cir. Ill. 1993)**

Defendants would like this Court to believe the Rooker-Feldman doctrine is much broader than it really is. There is no requirement of absolute separateness of claims.

> The fact that the plaintiff's pursuit of his federal claims could ultimately show that the state court judgment was erroneous did not automatically render Rooker-Feldman applicable: To show harm and thus keep the present suit alive, [the plaintiff] would have to show that the decision by the [state court] in his suit for breach of contract was erroneous, and that, it may appear, Rooker-Feldman bars him from doing. But the doctrine is not that broad. Were [the plaintiff] merely claiming that the decision of the state court was incorrect, even that it denied him some constitutional right, the doctrine would indeed bar his claim. *But if he claims, as he does, that people involved in the decision violated some independent right of his, such as the right (if it is a right) to be judged by a tribunal that is uncontaminated by politics, then he can, without being blocked by the Rooker-Feldman doctrine, sue to vindicate this right and show as part of his claim for damages that the violation caused the decision to be adverse to him and thus did harm him.* **Long v. Shorebank Dev. Corp., 182 F.3d 548, 555-556 (7th Cir. Ill. 1999)** (internal citations omitted) (emphasis added)

In this case, Plaintiff is not simply contending the state court judgment was incorrect. She is not attacking the state court judgment at all. Instead, Plaintiff is claiming that individuals involved in the decision to prosecute criminal contempt charges violated her independent federal rights. This claim is separate and apart from any issue Plaintiff takes with the agreement reached in the divorce proceeding. The divorce proceedings are only relevant as to the amount of damages Plaintiff seeks in this new and independent federal claim.

Moreover, Defendants' discussion of the Rooker-Feldman doctrine confuses the issues. Plaintiff's case is a typical wrongful prosecution case brought under § 1983. The only slightly unusual aspect is that the wrongful prosecution arose out of a criminal contempt proceeding initiated in a divorce case, instead of the more common fact scenario of a § 1983 claim arising out of a wrongful arrest. The manner of how this § 1983 action arose has no effect on the fact that Plaintiff's constitutional rights were abridged. Plaintiff meets all the elements of a malicious prosecution claim, and should be allowed to move forward.

> To prevail on a § 1983 claim of malicious prosecution, Edwards must prove the elements of the state tort action as well as some deprivation of constitutional magnitude. Anthony v. Baker, 767 F.2d 657, 662-63 (10th Cir. 1985); Cline v. Brusett, 661 F.2d 108, 112 (9th Cir. 1981); Norton v. Liddel, 620 F.2d 1375, 1378 (10th Cir. 1980); Hampton v. Hanrahan, 600 F.2d at 630. In Illinois, the requisite elements of a malicious prosecution claim are: 1) commencement of a judicial proceeding by the defendant, 2) termination of the proceeding in favor of the plaintiff, 3) absence of probable cause for the proceeding, 4) malice, and 5) damage. Rich v. Baldwin, 133 Ill.App.3d 712, 479 N.E.2d 361, 88 Ill. Dec. 748 (Ill.App.Ct. 1985). **Edwards v. Shelley, 669 F. Supp. 897, 899 (N.D. Ill. 1987)**

First, Defendants commenced criminal contempt proceedings against Plaintiff. (Complaint ¶ 3). Those criminal contempt proceedings were dismissed in favor of Plaintiff. (Complaint ¶ 5). Next, the proceedings brought by Defendants lacked probable cause. (Complaint ¶ 3). Third, the proceedings were brought with malice. (Complaint ¶ 3). Fourth, Defendants brought the criminal contempt proceedings in order to gain an advantage in the underlying divorce proceedings. (Complaint ¶ 19). Fifth, Plaintiff was damaged as a result of the wrongful criminal contempt proceedings brought against her. (Complaint ¶ 5). Finally, as a result of the malicious prosecution, Plaintiff suffered deprivation of her constitutional rights. (Complaint ¶ 30, 32-33).

It follows that Plaintiff's federal claims are not barred by the Rooker-Feldman doctrine, Plaintiff's federal claims should be treated as any other § 1983 claim, and Defendants' Motions to Dismiss should be denied.

## II. **Plaintiff's Claims are not Barred by the Doctrine of Res Judicata**

Plaintiff's federal claims are not precluded by the doctrine of res judicata and thus Defendants' Motions to Dismiss should be denied. The doctrine of res judicata requires "(1) a final judgment on the merits rendered by a court of competent jurisdiction, (2) the same cause of

action, and (3) the same parties or their "privies."" **Chi. Title Land Trust Co. v. Potash Corp. of Sask. Sales Ltd., 664 F.3d 1075, 1079 (7th Cir. Ill. 2011)**

First, Defendants incorrectly argue the final order, if any, in the divorce proceeding is the point at which it should be determined that res judicata bars Plaintiff's federal suit. As noted above, Plaintiff's federal claims relating to the criminal contempt charge are separate and apart from the divorce proceeding. There was no final order on the merits in the criminal contempt proceedings. Instead, the state court never reached the merits because the contempt charges were dropped in return for Plaintiff's acquiescence to the Defendants' terms in the divorce settlement. Thus, the final order on the merits element of res judicata is missing.

Second, Plaintiff's federal claims are entirely different from the underlying divorce proceedings. The issues involved in the divorce proceedings are not the same as the issues arising out of Plaintiff's claims of denial of access to the courts, 5th Amendment due process, abuse of process, bringing a criminal complaint to gain an advantage in a civil proceeding, the right to child support, malicious prosecution, and infliction of emotional distress. The issues involved in these federal claims are not shared by the divorce proceeding, so the second element of res judicata is also missing.

Finally, the current federal action and the state divorce action do not share parties. Defendant Kohlhoss was neither a party to the divorce case, nor a privy of a party. She could not have assumed any rights of Defendant Askar in the divorce action, neither did she have a personal stake in the case. It is inconsequential that Defendant Askar was a party to the divorce proceeding. The other two elements of res judicata are sorely missing, and Defendant Askar's presence as a party in both actions does not save Defendants' res judicata argument.

It follows that Plaintiff's claims are not barred by res judicata, and Defendants' Motions to Dismiss should be denied.

### III. Plaintiff's Claims are not Barred by the Younger Doctrine

Defendants wrongfully argue that *Younger* abstention should apply to this case. Defendants again ignore that Plaintiff's federal claims are separate from the divorce proceeding. Plaintiff does not ask that this court overturn the divorce settlement, instead she brings separate claims for violations of her federal rights. These claims could not be vindicated in the state divorce proceeding.

The *Younger* doctrine requires abstention by federal courts in ongoing state proceedings. **Younger v. Harris, 401 U.S. 37 (1971)**. However, in this case the criminal contempt case is over, having been dismissed prior to the current case being filed. Also, there are several exceptions to this doctrine. **Collins v. County of Kendall, 807 F.2d 95, 98 (7th Cir. Ill. 1986)**. Defendants, perhaps purposely, only discuss the extraordinary circumstances exceptions to the *Younger* doctrine in their Motions to Dismiss. However, *Younger* abstention does not preclude federal courts from hearing cases involving prosecution initiated in bad faith or to harass the other party.

> Bad faith or harassing prosecution, however, is an exception to the Younger doctrine. Huffman, 420 U.S. at 611. "'[A] showing of a bad faith [prosecution] is equivalent to a showing of irreparable injury for purposes of the comity restraints defined in Younger.'" Wilson v. Thompson, 593 F.2d 1375, 1382 (5th Cir. 1979) (quoting Shaw v. Garrison, 467 F.2d 113, 120 (5th Cir.), cert. denied, 409 U.S. 1024, 34 L. Ed. 2d 317, 93 S. Ct. 467 (1972)). The harm posed by bad faith prosecution is both immediate and great, and defending against the state proceedings would not be an adequate remedy at law because it would not ensure protection of the plaintiff's federal constitutional rights. Younger, 401 U.S. at 46. See Juidice v. Vail, 430 U.S. 327, 337, 51 L. Ed. 2d 376, 97 S. Ct. 1211 (1977). **Collins v. County of Kendall, 807 F.2d 95, 97 (7th Cir. Ill. 1986)**
>
> The Younger doctrine presumes that "the only constitutional issue at stake is the validity of the challenged state law -- that being prosecuted under an arguably (or

actually) invalid law is not itself a violation." Developments in the Law -- Section 1983 and Federalism, 90 Harv.L.Rev. 1133, 1286 (1977) (emphasis in original). That presumption does not obtain when the prosecution itself effects the constitutional violation . . . **Collins v. County of Kendall, 807 F.2d 95, 98 (7th Cir. Ill. 1986)**

A plaintiff claiming such a bad faith prosecution was initiated against him or her bears the following burden of proof:

> A plaintiff asserting bad faith prosecution as an exception to Younger abstention must allege specific facts to support an inference of bad faith. "The Younger rule, as applied in Hicks [v. Miranda, 422 U.S. 332, 45 L. Ed. 2d 223, 95 S. Ct. 2281 (1975)], requires more than a mere allegation and more than a 'conclusory' finding to bring a case within the harassment exception." Grandco Corp. v. Rochford, 536 F.2d 197, 203 (7th Cir. 1976). This specific evidence must show that state prosecution "was brought in bad faith for the purpose of retaliating for or deterring the exercise of constitutionally protected rights." Wilson, 593 F.2d at 1383. **Collins v. County of Kendall, 807 F.2d 95, 98 (7th Cir. Ill. 1986)**

A bad faith prosecution meant to harass and retaliate for the exercise of Constitutional rights is exactly what Plaintiff alleges in the current case. (Complaint ¶ 19). Further, Plaintiff in this case presents the requisite evidence of a bad faith prosecution. Plaintiff, in attempting to exercise her protected rights and was deterred from pursuing these rights by Defendants' wrongful criminal contempt charges. (Complaint ¶ 19). Because of this, the Court should deny Defendants' Motions to Dismiss.

## IV. Defendants are not Saved by Absolute or Qualified Prosecutorial Immunity

Defendants in this case are not protected by governmental immunity. Neither Defendant regularly performs work for the government, so the underlying principles of immunity do not apply in this case. For these reasons, Defendants' Motions to Dismiss should be denied.

While official prosecutors are afforded immunity while performing tasks related to their calling, private individuals are not afforded the same protections where these individuals were performing tasks usually associated with the government. The rationale underlying the grant of

immunity to government officials is to allow these individuals to carry out important government related tasks without fear of reprisal.

> At common law, government actors were afforded certain protections from liability, based on the reasoning that "the public good can best be secured by allowing officers charged with the duty of deciding upon the rights of others, to act upon their own free, unbiased convictions, uninfluenced by any apprehensions." Wasson v. Mitchell, 18 Iowa 153, 155-156 (1864) (internal quotation marks omitted); see also W. Prosser, Law of Torts § 25, p. 150 (1941) (common law protections derived from the need to avoid the "impossible burden [that] would fall upon all our agencies of government" if those acting on behalf of the government were "unduly hampered and intimidated in the discharge of their duties" by a fear of personal liability). **Filarsky v. Delia, 132 S. Ct. 1657, 1661-1662 (U.S. 2012)**

While the Supreme Court noted in some instances, immunity for private individuals conducting work performed directly for government ends may be proper, this rationale for immunity does not apply to private individuals carrying out government tasks related to their own private matters.

> "We explained that the reasons underlying recognition of qualified immunity did not support its extension to individuals who had no connection to government and pursued purely private ends. *Because such individuals "hold no office requiring them to exercise discretion; nor are they principally concerned with enhancing the public good," we concluded that extending immunity to them would "have no bearing on whether public officials are able to act forcefully and decisively in their jobs or on whether qualified applicants enter public service*." 504 U.S., at 168, 112 S. Ct. 1827, 118 L. Ed. 2d 504. **Filarsky v. Delia, 132 S. Ct. 1657, 1667 (U.S. 2012)** (emphasis added)

> Unlike school board members, see Wood, supra, or police officers, see Malley v. Briggs, 475 U.S. 335, 89 L. Ed. 2d 271, 106 S. Ct. 1092 (1986), or Presidential aides, see Butz, supra, private parties hold no office requiring them to exercise discretion; nor are they principally concerned with enhancing the public good. Accordingly, extending Harlow qualified immunity to private parties would have no bearing on whether public officials are able to act forcefully and decisively in their jobs or on whether qualified applicants enter public service. Moreover, unlike with government officials performing discretionary functions, the public interest will not be unduly impaired if private individuals are required to proceed to trial to resolve their legal disputes. In short, the nexus between private parties and the historic purposes of qualified immunity is simply too attenuated to justify

such an extension of our doctrine of immunity. **Wyatt v. Cole, 504 U.S. 158, 167-168 (U.S. 1992)**

Also, the 7th Circuit has noted absolute prosecutorial immunity does not apply in cases such as this one in which the prosecutor lacked probable cause or used fabricated evidence.

> Under the functional line the Supreme Court drew in Buckley, a prosecutor does not enjoy absolute immunity before he has probable cause. 509 U.S. at 274; see Fields, 672 F.3d at 512 ("Prosecutors do not function as advocates before probable cause to arrest a suspect exists … Where a litigant presents a due process claim—Brady, Giglio, or otherwise—the question of immunity turns on the capacity or function that the prosecutor was performing at the time of the alleged wrongful conduct. That is why we noted more recently in Lewis v. Mills, No. 11-2012, 677 F.3d 324, 2012 U.S. App. LEXIS 7993, 2012 WL 1372110 (7th Cir. April 20, 2012), that "a showing that a prosecutor investigated and fabricated evidence against a target would automatically defeat absolute prosecutorial immunity, even if that target was later brought to trial." 2012 U.S. App. LEXIS 7993, [WL] at *5 (emphasis added). **Whitlock v. Brueggemann, 682 F.3d 567, 579-580 (7th Cir. Ill. 2012)**

In this case, Defendant Kohlhoss was not holding a government office. She was not an elected States Attorney or even an Assistant States Attorney. Instead, she was acting as a private individual to her own ends, and the ends of her client Morad Askar. She initiated the criminal contempt proceedings, based on falsified evidence and lacking probable cause, in order to gain an advantage for her client in the underlying divorce proceeding. Because she was acting privately, the concerns underlying the grant of immunity to government officials are lacking. It follows, there is no justification for affording Defendant Kohlhoss immunity from liability in this current suit.

## V. Plaintiff has Plead Sufficient Facts of a Conspiracy Between Defendant Askar and Defendant Kohlhoss The State Actor

Defendants incorrectly argue that Plaintiff has not plead sufficient facts establishing a conspiracy between Defendants Kohlhoss and Askar. The case law Defendants cite is not on point and is interpreted by Defendants loosely.

Defendants cite the case of *Cooney v. Rossiter* as standing for the fact that bare allegations of a conspiracy in a plaintiff's complaint will not suffice. Plaintiff in this case cites sufficient facts to allege a conspiracy according to the *Cooney* case. In *Cooney*, the court found that particular plaintiff did not allege sufficient facts because not enough was alleged to tie private individuals to a state actor.

> It is not enough (and would not have been even before Bell Atlantic and Iqbal) that the complaint charges that "Bischoff and Dr. Lyle Rossiter, with the aid of Judge Nordquist, Dan Cain, and Brian Klaung continued the ongoing violations of Plaintiff, Deborah's Constitutional rights." That is too vague. With regard to Cain, the only specific allegations in the complaint are that he encouraged Bischoff to tell Rossiter to complete his report "expeditiously"; that he received Rossiter's report before Cooney did; and that he "took control" of the meeting in camera in which all the attorneys discussed the report with Judge Nordquist. The only specific allegation regarding Klaung is that he reported Cooney to the child welfare authority several months after she lost custody of the children. No factual allegations tie the defendants to a conspiracy with a state actor. See, e.g., Fries v. Helsper, supra, 146 F.3d at 457-58; Ciambriello v. County of Nassau, 292 F.3d 307, 324 (2d Cir. 2002). **Cooney v. Rossiter, 583 F.3d 967, 971 (7th Cir. Ill. 2009)**

However, in this case, Plaintiff Dawaji alleges more and that Defendant Askar was acting in concert in a conspiracy with a state actor (Defendant Kohlhoss as a special prosecutor). Plaintiff alleges in her complaint that Defendants, after being pressed on the financial issues of the divorce, decided together to bring contempt charges against Plaintiff. (Complaint P 19-24). Defendant Kohlhoss was the prosecutor in the contempt case and Defendant Askar's divorce lawyer. Defendant Askar was a party to the divorce case and was the complaining witness in the

criminal contempt case. It cannot be denied that they worked together (i.e. conspired) to bring the criminal contempt charges. These allegations are far more specific than those offered by the plaintiff in *Cooney*, where the plaintiff simply asserted the state actor defendant "took control" of the meeting in camera with the judge.

Further, Defendant Kohlhoss was clearly a state actor. Although Defendant Kohlhoss is regularly a private attorney, while prosecuting the criminal contempt charge, she became a government actor. She used the mechanics of the state, its courts and its criminal procedures, to prosecute the criminal contempt action against the Plaintiff. The Plaintiff was charged, arraigned, and was the subject of a recognize bond, all under Kohlhoss's prosecutorial direction. This use of the authority of the states criminal system by Kohlhoss made her a state actor.

> The defendants contend, if the action is for malicious abuse of process, there is no jurisdiction because the abuse of process after it was issued was not done under color of state law. This argument misconstrues the test for acting under color of state law. "Misuse of power, possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law, is action taken 'under color of' state law." United States v. Classic, 313 U.S. 299, 326, 85 L. Ed. 1368, 61 S. Ct. 1031 (1941). Certainly Shuman falls within the Classic standard because his official position as special prosecutor enabled him to undertake the investigation and prosecution of the plaintiff and thereby abuse process for purposes of extortion. **Jennings v. Shuman, 567 F.2d 1213, 1219-1220 (3d Cir. Pa. 1977)**

It follows, Plaintiff has sufficiently plead a conspiracy between a state actor, Defendant Kohlhoss, and Defendant Askar. As a result, Defendants' Motions to Dismiss should be denied.

## VI. **Defendants are Incorrect in Their Analysis of Plaintiff's Denial of Access to Courts Claim**

Defendants incorrectly interpret *Christopher v. Harbury*, 536 U.S. 403 (U.S. 2002) and thus erroneously assume Plaintiff cannot state a claim for denial of access to the courts.

In the *Christopher* case, the Supreme Court carved out two categories of denial of access to the courts cases. Plaintiff's claim for denial of access to the courts falls under the second category:

> The second category covers claims not in aid of a class of suits yet to be litigated, but of specific cases that cannot now be tried (or tried with all material evidence), no matter what official action may be in the future. *The official acts claimed to have denied access may allegedly have caused the loss or inadequate settlement of a meritorious case*, e.g., Foster v. Lake Jackson, 28 F.3d 425, 429 (CA5 1994); Bell v. Milwaukee, 746 F.2d 1205, 1261 (CA7 1984) ("The cover-up and resistance of the investigating police officers rendered hollow [the plaintiff's] right to seek redress"), the loss of an opportunity to sue, e.g., Swekel v. River Rouge, 119 F.3d 1259, 1261 (CA6 1997) (police cover-up extended throughout "time to file suit . . . under . . . statute of limitations"), or the loss of an opportunity to seek some particular order of relief, as Harbury alleges here. **Christopher v. Harbury, 536 U.S. 403, 413-414 (U.S. 2002)** (emphasis added)

Plaintiff alleges exactly what the Supreme Court in *Christopher* requires. Plaintiff alleges official acts which caused the loss or inadequate settlement of a meritorious case. Plaintiff states in her complaint that the initiation of criminal contempt charges caused her to acquiesce to Defendants' demands in the divorce case. (Complaint P 30). Had the contempt charges not been brought against Plaintiff, she would have not succumb to such one sided demands in the settlement agreement. Thus, Plaintiff states a valid claim for denial of access to the courts and the Defendants' Motions to Dismiss should be denied.

### VII. Defendants Erroneously Argue Due Process is not Offended by a Prosecution Lacking Probable Cause and Containing Fabricated Evidence

Defendants contend that the right to due process is not offended when an individual is prosecuted without probable cause or on the basis of fabricated evidence. At first glance, Defendants' cited case law may seem to support this argument. However, just because there is

no constitutional right to not be prosecuted absent probable cause, this does not negate Plaintiff's due process claims.

> Although the district court's adherence to the formula was proper at the time, we have since held in Newsome v. McCabe that § 1983 claim of malicious prosecution "should be analyzed not under the substantive due process approach implied by this [tripartite] formula but under the language of the Constitution itself." Newsome, 256 F.3d at 751. In other words, as Newsome explained, there is no "constitutional right not to be prosecuted without probable cause." A plaintiff therefore may not state a § 1983 claim simply by alleging that he was maliciously prosecuted. Instead, he must allege the violation of one of his constitutional rights, such as the right to a fair trial. Id. at 750-52. **Penn v. Harris, 296 F.3d 573, 576 (7th Cir. Ill. 2002)**

In this case, Plaintiff was prosecuted without probable cause. However, this is not the entirety of Plaintiff's claim. In prosecuting Plaintiff without probable cause, and doing so with falsified evidence, Defendants violated Plaintiff's right to a fair trial. Plaintiff states in her complaint that as a result of the prosecution lacking probable cause and the falsified evidence, she was bullied into taking less than a fair settlement in the underlying divorce proceedings. This is the essence of a denial of the right to a fair trial claim. It follows, Plaintiff has stated a valid due process violation and thus Defendants' Motions to Dismiss should be denied.

### VIII. Defendants Incorrectly Assume that State Law Remedies Preempt Both an Abuse of Process Claim as well as a Malicious Prosecution Claim

Defendants contend that because there are state law remedies available for Plaintiff's abuse of process and malicious prosecution claims, Plaintiff is not permitted to bring a § 1983 claim. This is not the case.

The court in *Edwards v. Shelly*, 699 F. Supp. 897 (N.D. Ill. 1987), stated that to prevail on a § 1983 claim, a plaintiff must prove elements of the state cause of action in addition to a deprivation of some constitutional right.

> To prevail on a § 1983 claim of malicious prosecution, Edwards must prove the elements of the state tort action as well as some deprivation of constitutional magnitude. **Edwards v. Shelley, 669 F. Supp. 897, 899 (N.D. Ill. 1987)** (internal citations omitted)

In this case, Plaintiff pleads the elements of a state action for malicious prosecution and abuse of process. Additionally, Plaintiff complains of the violation of her Fifth and Fourteeth Amendment rights. (Complaint ¶¶ 36-41). Therefore, Plaintiff states valid claims for abuse of process and malicious prosecution under § 1983 and Defendants' Motions to Dismiss should be denied.

> This falls within the Classic standard because his official position as special prosecutor enabled him to undertake the investigation and prosecution of the plaintiff and thereby abuse process for purposes of extortion The injuries allegedly caused by defendants' actions include the deprivation of liberty concomitant to arrest and to the pendency of a criminal process, whether the plaintiff was in jail, released on bail, or released on his own recognizance. Such deprivations without due process state an injury actionable under section 1983.
> When process is used to effect an extortionate demand, or to cause the surrender of a legal right, or is used in any other way not so intended by proper use of the process, a cause of action for abuse of process can be maintained. As distinguished from malicious prosecution, abuse of process does not require termination in the accused's favor or lack of probable cause.
> Brown alleges the second criminal prosecution was instituted to compel him to pay a civil debt. These allegations state a § 1983 claim grounded in abuse of process. **Brown v. Johnston, 675 F. Supp. 287, 290-291 (W.D. Pa. 1987)**

**WHEREFORE**, the Plaintiff Najah Dawaji, respectfully requests this Court enter an order dismissing Defendants' Motions to Dismiss, as well as any other relief this Court deems just and appropriate.

    Plaintiff Najah Dawaji


    By: /s/ Joel A. Brodsky
    Joel A. Brodsky her Attorney

**Joel A. Brodsky**
Attorney for Plaintiff Najah Dawaji
8 S. Michigan Ave.
Suite 3200
Chicago Illinois 60603
(312) 541-7000
jbrodsky@joelbrodskylaw.com

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that the following statements set forth in this instrument are true and correct: that I caused to be served the above and foregoing Joint Response to Both Defendant's Motions To Dismiss via the U.S. District Court's Electronic Filing System to all parties of record on the 13 day of January, 2014 before 12:00 midnight

Plaintiff Najah Dawaji

By: /s/ Joel A. Brodsky
Her Attorney

**Joel A. Brodsky**
Attorney for Plaintiff
8 S. Michigan Ave.
Suite 3200
Chicago Illinois 60603
(312) 541-7000