UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| NAJAH DAWAJI, | ) | |
| | ) | |
| Plaintiff, | ) | 13 C 6404 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| SUNNEY KOHLHOSS and MORAD ASKAR, | ) | |
| | ) | |
| Defendants. | ) | |

## <u>Memorandum Opinion and Order</u>

Najah Dawaji brought this suit against her ex-husband, Morad Askar, and Askar's divorce lawyer, Sunney Kohlhoss, under 42 U.S.C. § 1983 and Illinois law for conspiring to bring and actually bringing criminal contempt charges against her to force her to capitulate on financial and other issues in the couple's state court divorce case. Doc. 1. Askar and Kohlhoss moved to dismiss this suit under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Docs. 35, 39. After the motions were fully briefed, the suit was reassigned to the undersigned judge. Doc. 50. Defendants' motions are granted. Because the *Rooker-Feldman* doctrine deprives this court of subject matter jurisdiction, dismissal is appropriate under Rule 12(b)(1). And if *Rooker-Feldman* did not apply, the court would dismiss Dawaji's federal claims under Rule 12(b)(6) and her state law claims under 28 U.S.C. § 1367(c).

**Background**

Because Defendants' Rule 12(b)(1) motion accepts as true the facts alleged in the complaint and relies on materials subject to judicial notice, Doc. 44 at 8-10, 12-14, their jurisdictional challenge is facial, not factual. *See Apex Digital, Inc. v. Sears, Roebuck & Co.*, 572 F.3d 440, 443-44 (7th Cir. 2009). On a facial challenge to subject matter jurisdiction, as on

1

a Rule 12(b)(6) motion, the court must accept the complaint's well-pleaded factual allegations, with all reasonable inferences drawn in the plaintiff's favor, but not the complaint's legal conclusions. *See Munson v. Gaetz*, 673 F.3d 630, 632 (7th Cir. 2012); *Apex Digital*, 572 F.3d at 443-44; *Patel v. City of Chicago*, 383 F.3d 569, 572 (7th Cir. 2004). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Dawaji's brief opposing dismissal, so long as those facts "are consistent with the pleadings." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 n.1 (7th Cir. 2012). The facts are set forth as favorably to Dawaji as these materials allow. *See Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012).

In February 2011, an Illinois court dissolved Askar's and Dawaji's marriage. Doc. 1 at ¶ 12. The court gave Dawaji and Askar joint custody of their two minor children, with Dawaji designated the residential parent, but left for later resolution various financial issues, including child support, maintenance, and distribution of property. *Id.* at ¶¶ 12-13. Shortly thereafter, Dawaji moved the court for permission to relocate to Iowa or to Moline, Illinois, prompting Askar to seek additional custody and other rights. In April 2012, the parties entered into a Joint Parent Agreement and Custody Judgment covering these matters. *Id.* at ¶¶ 16-17.

Later that year, Askar retained Kohlhoss as his attorney. *Id.* at ¶ 18. The pair allegedly agreed that they would accuse Dawaji, falsely, of violating the Joint Parent Agreement; by doing so, they hoped to convince the court to hold Dawaji in contempt and thereby gain an advantage as to the unresolved issues in the divorce case. *Id*. at ¶ 19. In November 2012, Kohlhoss filed a civil contempt petition against Dawaji but withdrew it the following month. *Id*. at ¶ 20. Kohlhoss then filed a petition seeking to give Askar sole custody of the couple's two children,

again relying on the false allegations. A few months later, Kohlhoss sought and was granted leave to file an indirect criminal contempt petition against Dawaji. *Id.* at ¶¶ 21-24.

As requested by the court, Kohlhoss gave notice of the petition to the county prosecutor. The prosecutor informed the court that it did not wish to prosecute the matter. Kohlhoss then asked the court to appoint her to prosecute the contempt charges, and the court agreed. *Id.* at ¶¶ 25-27. In this capacity, Kohlhoss—who identified herself for these purposes as "special prosecutor"—arraigned Dawaji and held a bond hearing. *Id.* at ¶ 28.

The prospect of criminal charges terrified Dawaji, who soon assented to what she now characterizes as an "extraordinarily one[-]sided civil divorce settlement." *Id.* at ¶ 31. Dawaji agreed to give up her rights to any marital property, to waive back claims for child support and maintenance, to accept a small monthly payment for future support and maintenance, to return to Chicago from Moline, and to share physical custody of the children with Askar. Kohlhoss, in turn, agreed to dismiss the criminal contempt charges. *Id.* at ¶ 30. The state court was informed of the agreement and approved it in an order dated August 6, 2013, and Kohlhoss dismissed the contempt charges, as promised, on August 21. Docs. 44-11, 44-12, 44-13.

Dawaji filed this federal suit about two weeks later. Doc. 1. The complaint alleges that Askar and Kohlhoss conspired to manufacture the criminal contempt charges against Dawaji in order to force her to accept unfavorable settlement terms in the divorce proceeding. *Id.* at ¶¶ 1-5. Had she not been coerced into the settlement, Dawaji alleges, she would have "ma[d]e a record which would entitle her [to] well over three quarters of a million dollars … in marital assets, as well as child support and maintenance in an amount in excess of $5000.00 per month." *Id.* at ¶ 32.

3

Count I of the complaint alleges that Defendants conspired to and did deny Dawaji access to the courts in violation of the First Amendment. Counts II-IV allege that Defendants deprived Dawaji of due process, committed abuse of process, and brought a criminal complaint to gain advantage in a civil case, all in violation of the Fifth and Fourteenth Amendments. Count V alleges that Defendants deprived Dawaji of her right to child support under Title IV-D of the Social Security Act, 42 U.S.C.§ 651 *et seq*. Count VI alleges malicious prosecution under both federal and Illinois law. And Counts VII-VIII allege intentional and negligent infliction of emotional distress under Illinois law.

## Discussion

Defendants seek dismissal for lack of subject matter jurisdiction under the *Rooker-Feldman* doctrine; in the alternative, they seek dismissal on the merits. Jurisdiction must be considered first. *See Crawford v. Countrywide Home Loans, Inc.*, 647 F.3d 642, 645 (7th Cir. 2011).

*Rooker-Feldman* provides that a federal district court has no power to hear "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). Dawaji does not dispute that the divorce court's agreed order is a state court judgment for *Rooker-Feldman* purposes, *see Johnson v. Orr*, 551 F.3d 564, 568-69 (7th Cir. 2008), and she claims not to seek review or rejection of that judgment. As Dawaji sees it, her quarrel is not with the divorce court's agreed order, but with Defendants' conduct—their conspiring to bring false criminal contempt charges—that led her to agree to the order in the first place. She styles her lawsuit a "typical wrongful prosecution case brought under § 1983," and she says that "[t]he

divorce proceedings are only relevant as to the amount of damages Plaintiff seeks in this new and independent federal claim." Doc. 45 at 2.

The fact that Dawaji does not claim that the divorce court's agreed order itself is invalid does not, on its own, bring this case outside *Rooker-Feldman*'s scope. *See Johnson*, 551 F.3d at 568 ("It is of no consequence that Mr. Johnson's complaint does not challenge specifically the agreed order."). The Seventh Circuit has long and repeatedly held, both before and after the Supreme Court's recapitulation of the doctrine in *Saudi Basic Industries*, that even where a federal plaintiff's claims "do not on their face require review of a state court's decision," the doctrine applies if those claims are "inextricably intertwined" with a state court judgment and if the plaintiff "had a reasonable opportunity to raise the issue in state court proceedings." *Brown v. Bowman*, 668 F.3d 437, 442 (7th Cir. 2012); *see also Kansas City S. Ry. Co. v. Koeller*, 653 F.3d 496, 503 (7th Cir. 2011); *Crawford*, 647 F.3d at 647; *Johnson*, 551 F.3d at 568; *Kelley v. Med-1 Solutions, LLC*, 548 F.3d 600, 603 (7th Cir. 2008); *Dye v. Ameriquest Mortg. Co.*, 289 F. App'x 941, 943 (7th Cir. 2008); *Hemmer v. Ind. State Bd. of Animal Health*, 532 F.3d 610, 613-14 (7th Cir. 2008); *Beth-El All Nations Church v. City of Chicago*, 486 F.3d 286, 292 (7th Cir. 2007); *Manley v. City of Chicago*, 236 F.3d 392, 396 (7th Cir. 2001); *Ritter v. Ross*, 992 F.2d 750, 753-55 (7th Cir. 1993).[*] To determine whether a given federal claim and a prior state court

---

[*] Four days ago, the Seventh Circuit issued an opinion stating: "We are skeptical about the wisdom of asking whether something is 'intertwined' ('inextricably' or extricably) with a state court's judgment. Lower courts in both *Saudi Basic Industries* and *Lance v. Dennis*, 546 U.S. 459 (2006), added an 'inextricably intertwined' rider to the *Rooker-Feldman* doctrine and were reversed for their troubles. Courts should stick with the doctrine as stated in *Saudi Basic Industries*." *Richardson v. The Koch Law Firm*, __ F.3d __, 2014 WL 4792168, at *1 (7th Cir. Sept. 26, 2014). The *Richardson* opinion does not acknowledge the many post-*Saudi Basic Industries* decisions, cited in the text, where the Seventh Circuit applied the "inextricably intertwined" standard in *Rooker-Feldman* cases. That aspect of those decisions finds support in the *Feldman* case itself, which twice used the term "inextricably intertwined" to delineate the

5

judgment are inextricably intertwined, the court asks whether the federal claim "alleges that the supposed injury was caused by the state court judgment or, alternatively, whether the federal claim alleges an independent prior injury that the state court failed to remedy." *Brown*, 668 F.3d at 442. *Rooker-Feldman* bars the first type of claim, but not the second. *See Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 555 (7th Cir. 1999).

    The Seventh Circuit has held that the first category—the category covered by *Rooker-Feldman*—includes claims that the federal plaintiff was harmed by a state court judgment procured through fraud or other misconduct committed by the federal defendant. In *Taylor v. Federal National Mortgage Association*, 374 F.3d 529 (7th Cir. 2004), for example, the plaintiff accused the defendants of obtaining a state court foreclosure judgment through fraud, supposedly as part of a conspiracy to deprive her of her civil rights. Even though the plaintiff sought

---

doctrine's scope. *See D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 483 n.16 (1983) ("As we noted in *Atlantic Coast Line R. Co. v. Engineers,* 398 U.S. 281 (1970), 'lower federal courts possess no power whatever to sit in direct review of state court decisions.' *Id*., at 296. If the constitutional claims presented to a United States District Court are inextricably intertwined with the state court's denial in a judicial proceeding of a particular plaintiff's application for admission to the state bar, then the District Court is in essence being called upon to review the state court decision. This the District Court may not do."); *id*. at 486-87 ("[The federal plaintiffs'] allegations are inextricably intertwined with the District of Columbia Court of Appeals' decisions, in judicial proceedings, to deny the [federal plaintiffs'] petitions. The District Court, therefore, does not have jurisdiction over these elements of the [federal plaintiffs'] complaints."). *Saudi Basic Industries* cited, without disapproval, *Feldman*'s deployment of the "inextricably intertwined" language. *See* 544 U.S. at 286. More to the point for purposes of a district court's task, *Richardson* did not overrule the above-cited post-*Saudi Basic Industries* decisions. Instead, *Richardson* simply expressed skepticism about the "inextricably intertwined" analysis, and it ultimately resolved the case before it on non-*Rooker-Feldman* grounds because the state court judgment predicating the *Rooker-Feldman* argument had been vacated. *See Richardson*, 2014 WL 4792168, at *2. In these circumstances, this court should apply Seventh Circuit precedent as it stands rather than anticipate its overruling based on a dictum from *Richardson*. *See United States v. Blagojevich*, 612 F.3d 558, 562 (7th Cir. 2010) ("[T]he Supreme Court often reminds other judges that they must follow all of its decisions, even those that seem incompatible with more recent ones, until the Justices themselves deliver the coup de grâce.") (citing, *e.g.*, *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997)).

damages under 42 U.S.C. § 1985 and did not purport to challenge the foreclosure judgment itself, the Seventh Circuit held that *Rooker-Feldman* applied, explaining that the plaintiff's claim for "compensatory damages in the amount of the value of her home (plus 10% interest)" did not seek redress for "an independent injury arising from acts of the Defendants," but rather flowed directly from the foreclosure judgment itself. *Id*. at 534. Similarly, in *Maple Lanes, Inc. v. Messer*, 186 F.3d 823 (7th Cir. 1999), the plaintiff brought a § 1983 suit against a local sheriff for making false statements that allegedly caused the plaintiff's liquor license to be revoked without due process. The plaintiff sought damages, not review of the revocation order, but the Seventh Circuit still held his claim barred, reasoning: "In essence, Maples Lanes seeks to undo the effect of the revocation of its liquor license by collecting an amount of damages from [the sheriff] for the alleged violation of its constitutional rights equal to the monetary value of the license. The *Rooker-Feldman* doctrine does not permit this result." *Id.* at 825. The court added that "[t]here is little difference between awarding Maple Lanes the monetary value of the license and the license itself." *Ibid*.

Dawaji's suit is barred by *Rooker-Feldman* on the same grounds. The complaint describes her damages as the loss of marital property, child-support and maintenance payments, and custody rights—all of which flow from the divorce court's agreed order. Doc. 1 at ¶¶ 30-33. In *Maple Lanes*'s terms, there is little difference between awarding Dawaji the monetary value of the divorce settlement she claims she *would* have received absent Defendants' misconduct and re-opening the order itself. And, as in *Taylor*, the fact that Dawaji claims damages equal to the difference between the settlement she received and the settlement she should have received demonstrates that her asserted injury arises directly from the settlement encompassed in the state court's order. Another analogous case is *Golden v. Helen Sigman & Associates, Ltd.*, 611 F.3d

7

356 (7th Cir. 2010), which held that *Rooker-Feldman* barred a § 1983 claim that a court-appointed child representative violated the plaintiff's rights by making false statements during divorce proceedings; the Seventh Circuit reasoned that "the only injur[ies] that [the plaintiff] alleges that he has suffered … flow directly from the fruit of [the representative's] efforts: state-court custody orders favorable to" the plaintiff's spouse. *Id*. at 362. As in *Golden*, Dawaji's actual injury was caused by the unfavorable divorce court judgment, which was the fruit of Defendants' alleged conspiracy to commence false contempt proceedings to coerce Dawaji into agreeing to that judgment.

Having concluded that Dawaji's claims here are inextricably intertwined with the state court judgment, the court turns to whether Dawaji had a "reasonable opportunity" to raise in state court her beef with the criminal contempt proceedings. *Brown*, 668 F.3d at 442. Kohlhoss's initial brief argues that Dawaji "had ample opportunity to raise all of her claims in state court, both before and after the court accepted the settlement and entered judgment or through appeals." Doc. 44 at 14. In her response brief, Dawaji does not contend, let alone show, that she had no reasonable opportunity to raise in state court her challenge to the criminal contempt charge and Kohlhoss's appointment as special prosecutor; she therefore has forfeited the point. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument … results in waiver.").

This is so even though the forfeiture involves a question of subject matter jurisdiction. It is axiomatic that "[n]o party can waive or forfeit *a lack* of subject-matter jurisdiction, which [the court] must enforce even if everyone else has ignored it." *United States v. Adigun*, 703 F.3d 1014, 1022 (7th Cir. 2012) (emphasis added, internal quotation marks omitted); *see also Travelers Property Cas. v. Good*, 689 F.3d 714, 718 (7th Cir. 2012) ("Jurisdictional *objections*

8

cannot be forfeited or waived, of course, for this court has an independent obligation to satisfy itself that federal subject matter jurisdiction exists.") (emphasis added, internal quotation marks omitted); *Dexia Credit Local v. Rogan*, 602 F.3d 879, 883 (7th Cir. 2010) ("neither the parties nor their lawyers may waive arguments that the court *lacks* jurisdiction") (emphasis added). However, the *proponent* of subject matter jurisdiction, as with any party that bears the burden on a particular point, may forfeit an argument that could have been made to *support* jurisdiction. *See Travelers Property Cas.*, 689 F.3d at 718 ("[t]he court need not bend over backwards to construct alternative theories to persuade itself that subject matter jurisdiction exists"); *NetworkIP, LLC v. FCC*, 548 F.3d 116, 120 (D.C. Cir. 2008) ("arguments in favor of subject matter jurisdiction can be waived by inattention or deliberate choice"); *W.C. Motor Co. v. Talley*, __ F. Supp. 2d __, 2014 WL 3882489, at *6 (N.D. Ill. Aug. 7, 2014) (same); *Cicero-Berwyn Elks Lodge No. 1510 v. Philadelphia Ins. Co.*, 2013 WL 1385675, at *2 (N.D. Ill. Apr. 4, 2013) (same). Thus, by not arguing in this court that she was foreclosed from pressing in state court her objections to Kohlhoss's appointment as special prosecutor, Dawaji forfeited the argument. In any event, Dawaji in fact opposed in state court Kohlhoss's attempt to get herself appointed as a special prosecutor, Doc. 44-9 at 15-18, and Dawaji later could have sought a supervisory order from the Supreme Court of Illinois, *see* Ill. Sup. Ct. R. 383, to seek vacatur of the trial court's appointment order.

In opposing dismissal under *Rooker-Feldman*, Dawaji invokes a limiting principle set forth in *Nesses v. Shepard*, 68 F.3d 1003 (7th Cir. 1995), and its progeny. Doc. 45 at 2. In *Nesses*, the losing party in a state court contract case brought suit in federal court, alleging a "massive, tentacular conspiracy among the lawyers and the [state] judges" against him. 68 F.3d at 1004. The Seventh Circuit observed that *Rooker-Feldman* does not bar such a claim:

> To show harm [from the conspiracy] and thus keep the present suit alive, Nesses would have to show that the decision by the Indiana court in his suit for breach of contract was erroneous, and that, it may appear, *Rooker-Feldman* bars him from doing. But the doctrine is not that broad. Were Nesses merely claiming that the decision of the state court was incorrect, even that it denied him some constitutional right, the doctrine would indeed bar his claim. But if he claims, as he does, that people involved in the decision violated some independent right of his, such as the right (if it is a right) to be judged by a tribunal that is uncontaminated by politics, then he can, without being blocked by the *Rooker-Feldman* doctrine, sue to vindicate that right and show as part of his claim for damages that the violation caused the decision to be adverse to him and thus did him harm.

*Id.* at 1005. In *Loubser v. Thacker*, 440 F.3d 439 (7th Cir. 2006), the court characterized *Nesses* as holding that "[t]he claim that a defendant in a [federal] civil rights suit so far succeeded in corrupting the state judicial process as to obtain a favorable judgment is not barred by the *Rooker-Feldman* doctrine." *Id.* at 441 (internal quotation marks omitted).

It is important to precisely delineate the scope of the *Nesses* principle, which "could consume the *Rooker-Feldman* rule if interpreted too broadly." *Id.* at 444 (Sykes, J., concurring in part and dissenting in part). A review of the Seventh Circuit's treatment of the principle shows, with a possible exception noted below, that it applies *only* where the federal plaintiff alleges that the state court itself was or became corrupt, and *not* where the federal plaintiff alleges merely that its state court opponent or the opponent's lawyer was corrupt or committed fraud. *See Parker v. Lyons*, 757 F.3d 701, 706 (7th Cir. 2014) ("Parker alleges that Lyons … vitiated the state-court process by collaborating with a friendly judge to rush the case to a foreordained judgment. Because his claims are premised on detailed allegations that the winning party obtained a favorable civil judgment by corrupting the state judicial process, *Rooker-Feldman* does not bar them."); *Anderson v. Anderson*, 554 F. App'x 529, 530-31 (7th Cir. 2014) (applying *Nesses* where the plaintiff alleged fraud and collusion by his wife, his wife's attorneys, and the state court judge in a state court divorce case); *Sheikhani v. Wells Fargo Bank*, 526

10

F. App'x 705, 706 (7th Cir. 2013) (characterizing *Nesses* as holding that "[c]laims are not barred [by *Rooker-Feldman*] if the state court imposed an insurmountable obstacle to adjudication, for example through a conspiracy among the judge and state-court adversaries to corrupt the litigation process"); *Loubser*, 440 F.3d at 441 (applying *Nesses* where the plaintiff alleged that "that over a three-year period beginning in August of 2001, state judges and court reporters, [the plaintiff's] own lawyers, her former husband, building contractors, the owner of a jewelry store, and numerous friends and relatives of the other conspirators, conspired to destroy her financially and drive her out of the country by manipulating the divorce proceedings to deny her due process of law"). On this understanding, *Nesses* does not apply here because Dawaji does not allege that the state divorce judge was corrupt or a member of Defendants' conspiracy. At most, Dawaji alleges that the state judge was duped by Defendants, and the above-cited precedents establish that such an allegation does not implicate *Nesses*. *See Golden*, 611 F.3d at 362 (where the plaintiff's harm was caused by state court custody orders that resulted from the allegedly biased advocacy of the defendant child representative, distinguishing *Nesses* on the ground that the plaintiff "has not alleged a procedural harm that is separate and independent from the state court's custody determination," and describing *Nesses* as holding that "[the *Nesses*] plaintiff's claim that his state trial was tainted by politics was distinct from a claim that the state-court judgment was erroneous").

The one fly in the ointment is *Johnson v. Pushpin Holdings, LLC*, 748 F.3d 769 (7th Cir. 2014), a putative class action alleging that the defendant debt collectors committed common law abuse of process and malicious prosecution, and violated the Illinois consumer fraud statute, while pursuing numerous debt collection suits in state court. So far as the Seventh Circuit described it, the complaint alleged not that the state judiciary or its judges were or became

11

corrupt, but only that the defendants had "filed in Illinois courts some 1100 small-claims suits, all fraudulent." *Id.* at 771. Citing *Nesses*, the Seventh Circuit held that *Rooker-Feldman* posed no obstacle to federal jurisdiction: "The rule does not bar a federal suit that seeks damages for a fraud that resulted in a judgment adverse to the plaintiff. … Such a suit does not seek to disturb the judgment of the state court, but to obtain damages for the unlawful conduct that misled the court into issuing the judgment." *Id.* at 773.

*Pushpin Holdings* does not cite, let alone distinguish, *Taylor*, *Maple Lanes*, and *Golden*, which applied *Rooker-Feldman* where, as in *Pushpin Holdings*, the federal plaintiff alleged that the federal defendant had committed fraud or engaged in other dishonest conduct that led the state court to enter an adverse judgment. This court must follow all of the Seventh Circuit's precedents—unlike in *Richardson*, discussed above, the pertinent portion of *Pushpin Holdings* is a holding, not a dictum—and in a situation like this where those precedents appear to point in different directions, this court must decide which precedents are more analogous and speak more directly to the case at hand. *Taylor*, *Maple Lanes*, and *Golden* are more analogous to this case, in that each alleges misconduct committed by the federal defendants in a single state court proceeding. By contrast, *Pushpin Holdings* alleged a massive scheme (in over one thousand cases) to defraud the state judiciary, which, the Seventh Circuit might have concluded, presented a sufficient enough risk of corrupting the state judicial machinery that *Nesses* should apply. This admittedly is speculation. But it is far more plausible than the alternative conclusion—that *Pushpin Holdings* overruled *Taylor*, *Maple Lanes*, and *Golden*, silently and without a Seventh Circuit Rule 40(e) circulation. Indeed, the Seventh Circuit recently cited *Pushpin Holdings*, *Loubser*, and *Nesses* for the proposition, uniformly reflected in the Seventh Circuit's pre-*Pushpin Holdings* jurisprudence, that the *Nesses* principle applies to "claims … premised on detailed

allegations that the winning party obtained a favorable civil judgment by corrupting the state judicial process." *Parker*, 757 F.3d at 706.

For these reasons, the court concludes that Dawaji's suit is jurisdictionally barred by the *Rooker-Feldman* doctrine. But because the Seventh Circuit's *Rooker-Feldman* jurisprudence is in some flux, and as permitted by *Golden*, 611 F.3d at 362 ("We add for the sake of completeness that even if some aspect of these orders escapes *Rooker-Feldman*, … we would reject Golden's claims on the merits."), the court adds that if *Rooker-Feldman* were found not to apply, the court would dismiss the federal claims (all of which are brought under 42 U.S.C. § 1983) under Rule 12(b)(6) and the state law claims under 28 U.S.C. § 1367(c).

Count I of the complaint alleges that Defendants denied and conspired to deny Dawaji her First Amendment right of access to court. Dawaji relies on the statement in *Christopher v. Harbury*, 536 U.S. 403, 413-14 (2002), that this right is violated by "official acts … [that] allegedly have caused the loss or settlement of a meritorious case." Doc. 45 at 11. But the "official acts" referenced by *Christopher* are matters like police cover-ups or the intentional destruction of evidence that prevent litigants from meaningfully pressing their claims. 536 U.S. at 416 n.13. Here, the criminal contempt charges against Dawaji created no legal or evidentiary obstacle that prevented her from continuing to press her positions either in the divorce proceeding or in the contempt proceeding. Given the undisputed facts, it cannot be said that Dawaji was "prohibited from seeking effective and meaningful redress in court." *Thompson v. Boggs*, 33 F.3d 847, 853 (7th Cir. 1994). To the contrary, she fully participated in both proceedings until the very end.

Count II alleges that Defendants deprived Dawaji of due process by manufacturing evidence and by prosecuting her without probable cause. That claim essentially restates the

13

malicious prosecution claim in Count VI. *See McCann v. Mangialardi*, 337 F.3d 782, 786 (7th Cir. 2003) ("to the extent McCann maintains that Mangialardi denied him due process by causing him to suffer '[a] deprivation of liberty from a prosecution and a contrived conviction ... deliberately obtained from the use of false evidence,' his claim is, in essence, one for malicious prosecution") (alterations in original). The Seventh Circuit repeatedly has held that a plaintiff may bring a malicious prosecution claim under the federal constitution only if "the relevant state's law does not provide … a way to pursue such claims," that Illinois law "recognizes tort claims for malicious prosecution," and therefore that a plaintiff alleging malicious prosecution in Illinois may not bring a federal malicious prosecution claim under 42 U.S.C. § 1983. *Ray v. City of Chicago*, 629 F.3d 660, 664 (7th Cir. 2011); *see also Nelson v. Vill. of Lisle*, 437 F. App'x 490, 495 (7th Cir. 2011); *Parish v. City of Chicago*, 594 F.3d 551, 552 (7th Cir. 2009). These precedents defeat Dawaji's federal malicious prosecution claim. The same rationale defeats Dawaji's federal abuse of process claim in Count III. *See Adams v. Rotkvich*, 325 F. App'x 450, 452-53 (7th Cir. 2009) (holding that neither malicious prosecution nor abuse of process are constitutional torts if state law provides an effective remedy, which Illinois does); *Allen v. City of Chicago*, 2009 WL 4506317, at *7 (N.D. Ill. Nov. 30, 2009) (same).

Count IV purports to assert a § 1983 claim based on the violation of Illinois Rule of Professional Conduct 8.4(g), which provides that it is professional misconduct to "present, participate in presenting, or threaten to present criminal or professional disciplinary charges to obtain an advantage in a civil matter." Because that rule is not "a right secured by the Constitution and laws of the United States," its alleged violation cannot predicate a § 1983 claim. *Starnes v. Capital Cities Media, Inc.*, 39 F.3d 1394, 1396 (7th Cir. 1994).

Finally, Count V seeks to use § 1983 as a vehicle to enforce the child support provisions of Title IV-D of the Social Security Act, 42 U.S.C. § 651 *et seq*. In *Blessing v. Freestone*, 520 U.S. 329 (1997), the Supreme Court held that Title IV-D generally is not enforceable through § 1983 litigation, but recognized the possibility that Title IV-D "may give rise to *some* individually enforceable rights." *Id*. at 346 (emphasis added). Yet in response to Defendants' argument that Title IV-D "does not create a private right to child support but rather mandates federal and state agency requirements regarding the collection of child support," Doc. 40 at 12, Dawaji's response brief says … nothing. By not defending Count V from dismissal in the face of a plausible argument from Defendants, Dawaji forfeited that claim. *See G&S Holdings LLC v. Cont'l Cas. Co.*, 697 F.3d 534, 538 (7th Cir. 2012) ("We have repeatedly held that a party waives an argument by failing to make it before the district court. That is true whether it is an affirmative argument in support of a motion to dismiss or an argument establishing that dismissal is inappropriate. The obligation to raise the relevant arguments rests squarely with the parties, because, as we have repeatedly explained: Our system of justice is adversarial, and our judges are busy people. If they are given plausible reasons for dismissing a complaint, they are not going to do the plaintiffs research and try to discover whether there might be something to say against the defendants' reasoning.") (internal quotation marks and citations omitted); *see also Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011); *Wojtas v. Capital Guardian Trust Co.*, 477 F.3d 924, 926 (7th Cir. 2007); *Stransky v. Cummins Engine Co.*, 51 F.3d 1329, 1335 (7th Cir. 1995).

The disposal of Dawaji's federal claims on these grounds makes it unnecessary to consider Defendants' *res judicata*, state action, and immunity challenges to those claims. And with the federal claims dismissed, and again assuming that *Rooker-Feldman* does not apply, the

court would exercise its discretion under 28 U.S.C. § 1367(c) to relinquish supplemental jurisdiction over Dawaji's state law claims.

The parties are not of diverse citizenship, Doc. 1 at ¶¶ 8-10 (suggesting that all three parties are Illinois citizens), so Dawaji premises jurisdiction over her state law claims on the supplemental jurisdiction statute, 28 U.S.C. § 1367(a). Doc. 1 at ¶ 6. Putting aside *Rooker-Feldman*, § 1367(a) indeed grants this court jurisdiction over the state law claims, which "derive from a common nucleus of operative fact" as her federal claims. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966). But § 1367(c)(3) provides that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if … the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). "As a general matter, when all federal claims have been dismissed prior to trial, the federal court should relinquish jurisdiction over the remaining pend[e]nt state claims." *Williams v. Rodriguez*, 509 F.3d 392, 404 (7th Cir. 2007). This general rule has three exceptions: "when the [refiling] of the state claims is barred by the statute of limitations; where substantial judicial resources have already been expended on the state claims; and when it is clearly apparent how the state claim is to be decided." *Ibid*.

None of the exceptions apply here. Illinois law gives Dawaji one year to refile her state law claims in state court if the applicable limitations period for those claims expired while the case was pending in federal court. *See* 735 ILCS 5/13-217; *Davis v. Cook Cnty.*, 534 F.3d 650, 654 (7th Cir. 2008). Substantial federal judicial resources have not yet been committed to the state law claims. And it is not clearly apparent how the state law claims should be decided. It follows that relinquishing jurisdiction over the state law claims would be the appropriate course

under § 1367(c)(3). *See RWJ Mgmt. Co. v. BP Prods. N. Am., Inc.*, 672 F.3d 476, 479-80 (7th Cir. 2012); *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251-53 (7th Cir. 1994).

**Conclusion**

For the foregoing reasons, Defendants' motions to dismiss are granted. The case is dismissed under the *Rooker-Feldman* doctrine for lack of subject matter jurisdiction. *See Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004) ("When the *Rooker-Feldman* doctrine applies, there is only one proper disposition: dismissal for lack of federal jurisdiction. A jurisdictional disposition is conclusive on the jurisdictional question: the plaintiff cannot re-file in federal court. But it is without prejudice on the merits, which are open to review in state court to the extent the state's law of preclusion permits."). In the event *Rooker-Feldman* did not apply, Dawaji's federal claims would be dismissed under Rule 12(b)(6) for failure to state a claim, and her state law claims would be dismissed under § 1367(c) without prejudice to refiling in state court. Either way, Dawaji is free to pursue her state law claims in state court.

September 30, 2014

_____
United States District Judge