**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals
### For the Seventh Circuit
### Chicago, Illinois 60604

Argued October 7, 2015
Decided October 16, 2015

**Before**

WILLIAM J. BAUER, *Circuit Judge*

MICHAEL S. KANNE, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

| | |
|---|---|
| No. 14-3238 | |
| | Appeal from the |
| NAJAH DAWAJI, | United States District Court |
| *Plaintiff-Appellant*, | for the Northern District of Illinois, Eastern Division. |
| v. | |
| | No. 13 C 6404 |
| MORAD ASKAR and SUNNEY KOHLHOSS, | |
| | Gary S. Feinerman, |
| *Defendants-Appellees*. | *Judge*. |

### O R D E R

Najah Dawaji appeals the dismissal of her suit alleging that her ex-husband, Morad Askar, and his divorce attorney, Sunney Kohlhoss, prosecuted a baseless criminal-contempt proceeding against her to scare her into accepting an unfavorable financial settlement in the divorce. The district court determined that her suit was barred under the *Rooker-Feldman* doctrine. Dawaji appeals, arguing that *Rooker-Feldman* does not apply because, she says, her injuries stem from Askar and Kohlhoss's actions, not the state-court judgment. We disagree and affirm the judgment dismissing the suit for lack of subject-matter jurisdiction. Because the state-court judgment is the source of Dawaji's alleged injuries, *Rooker-Feldman* applies.

Case: 1:13-cv-06404 Document #: 68 Filed: 11/09/15 Page 2 of 4 PageID #:1014
Case: 14-3238    Document: 00712644086    Filed: 11/09/2015    Pages: 4

No. 14-3238                                                                    Page 2

### I. Background

Dawaji and Askar divorced in 2011. They agreed to joint custody of their two children, and the terms of the agreement were set forth in a Joint Parenting Agreement and Custody Judgment. The Illinois state court overseeing the divorce left for later determination the contested financial issues: child support, maintenance, and the division of marital assets.

While the dispute over financial issues remained open, Askar petitioned the state court to find Dawaji in criminal contempt of court. He accused Dawaji of violating the Joint Parenting Agreement by, for example, refusing to respond to his e-mails and complaining about him in front of their children. The local prosecutor declined to prosecute, so the court appointed Kohlhoss, Askar's attorney, as "special prosecutor" for the contempt proceeding. Dawaji's lawyer objected to the appointment, but raised no allegations or evidence of fraud. On Dawaji's motion the court transferred the contempt case to another judge.

While the contempt prosecution was pending, the judge presiding in the divorce case returned to the remaining issues. Trial commenced, but after two days the parties settled the financial dispute. As part of the settlement, Askar and Kohlhoss agreed to dismiss the criminal-contempt petition. In exchange Dawaji agreed to accept $2,200 per month for 24 months as maintenance and child support; to accept $7,000 as a property settlement; to move to Chicago from Moline, Illinois; and to share custody of the children equally. The court approved the settlement. Dawaji did not appeal.

One month later, Dawaji sued Askar and Kohlhoss in federal court under 42 U.S.C. § 1983 alleging that they coerced her into accepting the financial settlement. (Kohlhoss, as the special prosecutor, is the alleged state actor for § 1983 purposes.) Adding details not raised in state court, Dawaji asserted that Askar and Kohlhoss brought a fraudulent contempt petition to convince the state court to appoint Kohlhoss as special prosecutor and to pressure Dawaji into accepting less in the financial settlement. Dawaji alleges that had she not been "terrified" of the criminal-contempt prosecution, she "would have been able to make a record which would entitle her [to] … $750,000[] in marital assets, as well as child support and maintenance in an amount in excess of $5,000 per month."

The district court dismissed Dawaji's claims for lack of subject-matter jurisdiction under the *Rooker-Feldman* doctrine. *See D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fid. Trust Co.*, 263 U.S. 413 (1923). The judge concluded that Dawaji's

No. 14-3238 Page 3

injury and damages arose directly from the state-court order approving the financial settlement—and were therefore barred—because "there is little difference between awarding Dawaji the monetary value of the divorce settlement she claims she *would* have received absent Defendants' misconduct and re-opening the order itself."

## II. Analysis

On appeal Dawaji challenges the district court's application of *Rooker-Feldman*. She maintains that her suit focuses not on the state-court judgment but on Askar and Kohlhoss's fraudulent criminal-contempt petition, which they used to force her into the unfavorable financial settlement that the state court approved. But if a federal plaintiff alleges that a fraud produced an adverse state-court decision, then the judicial decision is the source of injury for *Rooker-Feldman* purposes. *See Iqbal v. Patel*, 780 F.3d 728, 730 (7th Cir. 2015) (explaining that "fraud (no matter how described) does not permit a federal district court to set aside a state court's judgment in a civil suit"); *Harold v. Steel*, 773 F.3d 884, 885 (7th Cir. 2014) (applying the *Rooker-Feldman* doctrine because when false statements to a state court produce an adverse decision, "the state court's judgment is the source of the injury of which plaintiffs complain in federal court").

Dawaji's injury comes from the state-court judgment. Without that judgment approving the settlement, and the earlier decision to appoint the special prosecutor, Askar and Kohlhoss's fraud scheme would have flopped, and Dawaji would have had no injury or damages to claim. Because the harm did not materialize until the adverse state-court judgment, that judgment, not the alleged misconduct that preceded the judgment, is the source of the injury. *See Harold*, 773 F.3d at 885–86 (rejecting claim that the injury arose from a party's false statements in a wage-garnishment suit and ruling instead that the injury arose from the state-court's order garnishing plaintiff's wages because "[n]o injury occurred until the state judge ruled against [plaintiff]"); *Golden v. Helen Sigman & Assocs., Ltd.*, 611 F.3d 356, 362 (7th Cir. 2010) (applying *Rooker-Feldman* because injuries from a lawyer's actions during divorce and custody proceedings "flow[ed] directly from the fruit of [lawyer]'s efforts: state-court custody orders favorable to [plaintiff's ex-wife]"); *Kelley v. Med-1 Solutions, LLC*, 548 F.3d 600, 604–05 (7th Cir. 2008) (rejecting the contention that an injury arose from a party's false statement that it was entitled to attorney's fees rather than from the judgment granting those fees and explaining: "[b]ecause defendants needed to prevail in state court in order to capitalize on the alleged fraud, the [tort] claims that plaintiffs bring ultimately require us to evaluate the state court judgments"). Although *Rooker-Feldman* may not apply if Dawaji was prevented from raising her fraud allegations in state court, *see Long v.*

No. 14-3238 Page 4

*Shorebank Dev. Corp.*, 182 F.3d 548, 558–59 (7th Cir. 1999), she does not make that claim. Under these circumstances *Rooker-Feldman* applies and divested the district court of jurisdiction.

*Rooker-Feldman* applies for the additional reason that despite Dawaji's assertions to the contrary, the relief she seeks would require that we nullify the state-court judgment. Dawaji's request for damages is the amount that she would have received had she not been coerced into accepting the settlement. She thus wants the federal court in effect to negate the state-court order approving the agreed-upon child support, maintenance, and property settlement. *Rooker-Feldman* cannot be circumvented in this way. *See Taylor v. Fed. Nat'l Mortg. Ass'n*, 374 F.3d 529, 534 (7th Cir. 2004) (holding that a claim seeking the value of plaintiff's foreclosed home (plus interest and punitive damages) would effectively undo the state-court foreclosure judgment); *Maple Lanes, Inc. v. Messer*, 186 F.3d 823, 825–26 (7th Cir. 1999) (applying *Rooker-Feldman* where the relief requested—the monetary value of a revoked liquor license—would "effectively reverse the state court judgment upholding the revocation of the liquor license").

There is another jurisdictional defect that neither party discusses: the domestic-relations exception to federal subject-matter jurisdiction also bars Dawaji's suit. The domestic-relations exception precludes federal jurisdiction when a plaintiff seeks "one or more of the distinctive forms of relief associated with the domestic relations jurisdiction: the granting of a divorce or an annulment, an award of child custody, a decree of alimony or child support." *Friedlander v. Friedlander*, 149 F.3d 739, 740 (7th Cir. 1998); *see Jones v. Brennan*, 465 F.3d 304, 306 (7th Cir. 2006) ("[T]he domestic-relations exception … denies federal jurisdiction to grant a divorce or exercise the other characteristic powers of a domestic-relations court … ."). As just discussed, Dawaji's complaint, in effect, asks the federal court to adjudicate the financial phase of a divorce proceeding. If a district court adjudicated her request for damages, it would have to evaluate the merits of her request for larger payments for child support and maintenance and additional marital assets. But decisions about the allocation of domestic assets run afoul of the domestic-relations exception to federal jurisdiction. *See Ankenbrandt v. Richards*, 504 U.S. 689, 701–02 (1992). Thus, for this additional reason, the district court had no jurisdiction.

AFFIRMED.